IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

REBECCA KLUG,

      Plaintiff,

v.                                CIVIL ACTION NO.: 3:18-CV-00711
                                JUDGE ROBERT C. CHAMBERS

MARSHALL UNIVERSITY
JOAN C. EDWARDS SCHOOL OF
MEDICINE, MARSHALL
UNIVERSITY BOARD OF GOVERNORS,
and FARID B. MOZAFFARI, an individual,

      Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MARSHALL
UNIVERISTY JOAN C. EDWARDS SCHOOL OF MEDICINE'S MOTION TO DISMISS**

## I.      Introduction

Pending before the Court is Defendant, Marshall University Joan C. Edward's School of Medicine's ("Defendant's") Motion to Dismiss.  This Defendant submits this Memorandum of Law in support of said Motion.

## II.      Statement of Facts

Plaintiff Rebecca Klug began the general surgery residency program at Marshall University on or about July 1, 2013. See ECF 1, at ¶ 46. The general surgery residency program at Marshall University is five years and the contracts are renewed year to year. See ECF 1, at ¶ 29. The Plaintiff was a resident in the general surgery residency program until June 30, 2016. See ECF 1, at ¶ 129.

During the residency program, the Plaintiff would take in-service training exams to allow Marshall University to assess her progress and competencies. See ECF 1, at ¶ 40. The Plaintiff did

not score well on the in-service training exams. See ECF 1, at ¶ 74. In fact, the Plaintiff was in the bottom one-percentile of all test takers. Moreover, the Plaintiff did not improve her scores. See ECF 1, at ¶ 74 (where she admitted to scoring poorly on her second test). For various reasons, the Plaintiff had to repeat her second year of the residency program. See ECF 1, at ¶ 114. During the repeat of her second year, Marshall University decided not to renew her contract. The decision not to renew the Plaintiff's residency contract for her third year (or fourth year if she did not repeat) was appealed by the Plaintiff. See ECF 1, at ¶ 137. The Plaintiff lost this appeal at all three levels of the appeal process. See ECF 1, at ¶ 137 and 144.

Nonetheless, Marshall University offered the Plaintiff the opportunity, to which she accepted, to work in the lab as a research scientist. See ECF 1, at ¶ 147. Plaintiff is currently still employed at that position. Plaintiff subsequently filed her Complaint on April 27, 2018. See ECF 1, generally. Service was then waived on behalf of this Defendant on May 11, 2018. See ECF 7.

### III.    Legal Standard

The Federal Rules of Civil Procedure provide that a trial court must dismiss a plaintiff's complaint if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).   A complaint fails to state a claim when, viewing the factual allegations as true and in a light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim that is plausible on its face." *Bell*, 550 U.S. a 570.

Determining whether the complaint states a facially plausible claim for relief is a "context-specific task that requires the court to draw upon its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  While a court must accept the material facts alleged in the complaint as true, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim.  Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).[1]

## IV.    Argument

### A.    Plaintiff's claims are barred by the applicable Statute of Limitations.

Pursuant to West Virginia law, any personal injury or property action that does not have a prescribed statute of limitations shall be brought within two years of the time the right accrued. W. Va. Code § 55-2-12. The Fourth Circuit applied this default limit to a civil rights case in *McCausland v. Mason County Board of Education,* holding that "in the absence of any state statute of limitations specifically applicable to suits to redress a violation of civil rights, the West Virginia limitation on personal injury actions applies in this case." 649 F.2d 278, 279 (4th Cir. 1981).  The Plaintiff received notice of her termination on March 28, 2016, which means that she had until March 28, 2018 to file her claim before the two-year statute of limitations expired.

West Virginia law for tolling principles controls the litigation at hand, because Federal courts "refer to state law for tolling rules, just as [they do] for the length of statutes of limitations." *Wallace v. Kato*, 549 U.S. 384, 394 (2007).  Pursuant to West Virginia law, notice

---

[1] Defendants submit that Rule 12(b)(1) may also apply to certain portions of the arguments contained in this Memorandum.  A motion brought pursuant to Rule 12(b)(1) challenges the court's subject matter jurisdiction over the dispute.  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  Moreover, "the Fourth Circuit has not resolved whether or not a motion to dismiss based on the Eleventh Amendment is properly considered pursuant to Rule 12(b)(1) or 12(b)(6)."  *Haley v Virginia Dept. of Health*, 2012 U.S. Dist. LEXIS 161728 (W.D. Va. Nov. 13, 2012).  However, there is some authority which indicates a trend to analyze Eleventh Amendment immunity arguments under Rule 12(b)(1).  *Id.*

must be given thirty (30) days before the filing of a complaint against a government agency. W. Va. Code § 55-17-3. This notice is given to the chief officer of the government agency and the attorney general. W. Va. Code § 55-17-3(a)(1). The chief officer of the government agency is then responsible to give written notice of the suit to the President of the Senate and the Speaker of the House of Delegates. W. Va. Code § 55-17-3(b)(1).

Since public interest may be affected by the outcome of such litigation, the policy behind this rule is to keep the Legislature aware of any suits that arise so swift legislative action can be taken if needed. W. Va. Code § 55-17-1. To give proper notice to the chief officer and the attorney general, the notice of claim must be sent by way of certified mail with a return receipt requested. W. Va. Code § 55-17-3(a)(1).  Under this rule, the filing of a notice of the claim with the appropriate officer of the government agency tolls the statute for thirty days. W. Va. Code § 55-17-3(a)(2). The date of tolling begins on the day the notice is mailed, and then begins tolling once again on the date that is noted on the return receipt, i.e. the date the chief officer of the government agency received the notice. *Id.* Therefore, if the notice is properly served, the statute of limitations would not cease tolling until thirty days after receipt of the notice of claim.

The intent of the tolling statute is to provide the government with notice of suit—not to extend the given time to file suit under the statute of limitations. The Supreme Court of Appeals of West Virginia found in *Magee v. Racing Corporation of West Virginia* that "[w]ithout question, the statute was enacted expressly to create additional notice and opportunity for the Legislature to deal with claims against 'government agencies,' as defined in the statute. *Magee v. Racing Corp. of W. Va.*, No. 17-0008, 2017 W. Va. LEXIS 856 (Nov. 1, 2017).

The tolling provision benefits plaintiffs for any shortening of the applicable statute of limitations occasioned by the pre-suit notice to such agencies. The notice requirement allows for

plaintiffs to not have to shorten their statute of limitations by filing a notice at least thirty days before the expiration of the statute of limitations. *Motto v. CSX Trans. Inc.,* 647 S.E.2d 848, 850 n.5 (W.Va. 2007). However, this function does not afford plaintiffs an extended period of time after the expiration of the statute of limitations in which to file their complaint that similarly situated plaintiffs filing suit against non-governmental entities would not have.

Here, the Plaintiff submitted the notice of claim on March 21, 2018 and the notice of suit was received on March 26, 2018. Therefore, the thirty-day tolling period began at the time of the receipt of the intent to sue and ended on April 25, 2018. The Plaintiff did not file her complaint until April 27, 2018, thirty days past the expiration of the statute of limitations and two days past when the tolling period ended to delay the statute of limitations. In order to comply with the thirty-day notice requirement once the Plaintiff's claim had expired under the statute of limitations, she should have filed her claim by April 25, 2018. Thus, because she did not promptly file her complaint prior to the completion of the tolling period, her claims are barred by the West Virginia statute of limitations.

   **B.     Marshall University School of Medicine is not a separate entity and thus cannot be sued.**

Chapter 18B of the West Virginia Code makes clear that Marshall University includes all of its schools, disciplines, and departments under one university umbrella with a single institutional Board of Governors. The Marshall University Board of Governors is authorized by the West Virginia legislature to "[d]etermine, control, supervise and manage the financial, business and education policies and affairs" of Marshall University. See W. Va. Code § 18B-2A-4. The powers and duties of Marshall University's governing board are far-reaching and include the employment of all faculty and staff at the university. Id.

Further, this Court has previously found that the Marshall University Board of Governors does business as the Joan C. Edwards School of Medicine ("MUSOM"). See *Zimmeck v. Marshall Univ. Bd. of Governors*, No. 3:13-14743, 2013 U.S. Dist. LEXIS 149979, at *1 n.1 (S.D. W. Va. Oct. 18, 2013). They are one in the same. Therefore, Marshall University's School of Medicine must be dismissed with prejudice from this civil action, as they are not a separate legal entity and Plaintiff has not asserted a claim against this Defendant for which relief can be granted.

**C.     Sovereign immunity bars the Plaintiff's WVHRA claims against the Defendant.**

It is well-settled that Marshall University, as well as the Marshall University Board of Governors, is an agency of the State of West Virginia.  *See Zimmeck v. Marshall Univ. Bd. of Governors*, 2013 U.S. Dist. LEXIS 149979, 16-17 (S.D. W. Va. Oct. 18, 2013); *see also, Graf v. West Virginia University*, 429 S.E.2d 496 (W. Va. 1992).  Any claim brought against a state agency is considered one against the State of West Virginia itself.  *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468 (4th Cir. 1988).

The State of West Virginia has sovereign immunity from suit pursuant to the Eleventh Amendment of the United States Constitution and Article VI, § 35 of the W*est Virginia Constitution*.  The Eleventh Amendment bars lawsuits against a State brought by its own citizens or any citizens of another State.  *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299 (2009). This protection not only protects the State itself, it also protects a State's *agencies, divisions, departments, officials,* and other "arms of the State."  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 78 (1989) (emphasis added); *see also,* Roach v. Burch, 825 F.Supp. 116, 118 (N.D. W. Va. 1993).  As a result, suits against state agencies are considered as suits against the state itself. *Will*, 491 U.S. at 71.

While there are three narrow exceptions to this immunity, as set forth in *Lee-Thomas v. Prince George's Cnty. Publ. Schs.,* 666 F.3d 244 (4th Cir. 2012), none of them apply in the instant matter as it pertains to plaintiff's state law-based claims.  First, Congress has not expressly and unequivocally abrogated West Virginia's sovereign immunity, with the intent to do so, for the claims asserted by the plaintiff in this civil action.  See, *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).   Secondly, the Plaintiff has not sought prospective injunctive relief against Marshall University.  See, *Frew we rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). Finally, there has been no consent on the part of Marshall University, either directly or constructively, in expressly waiving its Eleventh Amendment immunity protection and consent to suit in federal court.  See, *Lapides v. Bd. of Regents of Univ. Sys. Of Ga.*, 535 U.S. 613, 618 (2002); *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985); *Westinghouse Elec. Corp. v. West Va. Dept. of Highways*, 845 F.2d 468, 470 (4th Cir. 1988).

Direct waiver by statute or constitution may be found only where the State has indicated its intent to subject itself to suit in federal court "by the most express language, or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction."  *Westinghouse,* 845 F.2d at 470, citing *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909).  The State's waiver of immunity from suit in federal court must be an unequivocal statement of the State's intention to subject itself to suit in federal court.  *Westinghouse,* 845 F.2d at 470, citing *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944); *Smith v. Reeves*, 178 U.S. 436, 441 (1900).  Further, a State's waiver of immunity in state court will not meet the unequivocal standard necessary to abrogate the Eleventh Amendment immunity in federal court. *Westinghouse,* 845 F.2d at 470-71.

Just as in *Westinghouse,* the West Virginia Constitution contains no provision subjecting the state to suit in federal court.  Rather, the West Virginia Constitution clearly provides "[t]he State of West Virginia shall <u>never</u> be made defendant in any court of law or equity except the state of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee."  *W. Va. Const.* art. VI, Sec. 35. (emphasis added).

Likewise, the WVHRA does not include an unequivocal statement of the State's intention to subject itself to suit in federal court.  Rather, the WVHRA, by its language, describes filing suits in the circuit court, *W. Va. Code* §§ 5-11-8(d)(5), 18 and 20, or in the county where the defendant resides or transactions business.  *W. Va. Code* § 5-11-13(b).

In the instant case, all of the state-based claims brought by the Plaintiff are unquestionably barred by Eleventh Amendment sovereign immunity.  There is no exception that can be applied which would defeat this sovereign immunity for these claims.  The Plaintiff has not plead any facts which would give rise to any exception to protect Marshall University from its sovereign immunity.  In light of the foregoing, the Plaintiff's claims brought against Marshall University must be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the *Federal Rules of Civil Procedure*.

**D.    The Plaintiff's Title IX Claim's also are barred by the doctrine of Sovereign Immunity.**

With respect to Title IX, while a District Court in Puerto Rico held that the University of Puerto Rico was entitled to Eleventh Amendment immunity from damages claims. *Lipsett v. University of Puerto Rico* (1990, DC Puerto Rico) 745 F Supp 793. In *Lipsett*, a female surgery intern in the university's school of medicine, filed a Title IX action, seeking damages and declaratory and injunctive relief for alleged sexual harassment and other discriminatory treatment.

The court held that while the student was able to seek injunctive relief, she could not seek damages due to the doctrine of sovereign immunity.

Under our facts, the Plaintiff has not moved for injunctive relief that would preclude the application of sovereign immunity. Therefore, the Plaintiff's Title IX claims must be dismissed with prejudice as this Defendant is entitled sovereign immunity.

**E.     The Plaintiff's Breach of Contract Claim fails to state a claim upon which relief may be granted.**

As to the plaintiff's breach of contract claims, Marshall University is also entitled to sovereign immunity for this claim. *Zimmeck v. Marshall Univ. Bd. of Governors*, No. 3:13-14743, 2013 U.S. Dist. LEXIS 149979, at \*23 (S.D. W. Va. Oct. 18, 2013). In *Zimmeck*, the plaintiff filed a Complaint against the Marshall University Board of Governors and five individuals affiliated with Marshall University. *Id* at \*2. In the Complaint, the plaintiff alleged that Marshall University breached the express and implied contract that existed between Plaintiff and Marshall University. *Id* at \*22.

Here, the Plaintiff limited her recovery for damages to "under or up to the limits of the state's applicable liability insurance policy." See ECF 1, at ¶ 163. However, this Court previously ruled that "regardless of the type of relief sought…Plaintiff's claim against Marshall University for breach of contract is barred by the Eleventh Amendment." *Zimmeck* at \*23; See also *Sarkissian v. W. Va. Univ. Bd. of Governors,* No. 1:05-cv-144, 2007 U.S. Dist. LEXIS 32881, 2007 WL 1308978 *(*N.D. W. Va. May 3, 2007*)* (finding public university West Virginia University immune under the Eleventh Amendment from breach of contract claim). Accordingly, the Plaintiff's breach of contract claim must be dismissed.

**F.      Plaintiff's Aiding and Abetting claim fails to state a claim upon which relief may be granted.**

West Virginia has not defined the terms "aid" and abet" in its Human Rights Act. In *Larry v. Marion County Coal Company*, the District Court of the Northern District of West Virginia predicted that the Supreme Court of West Virginia would follow other states' approaches to interpreting the term within their own state Human Rights Acts. 2018 WL 648371 at *10–11. To define aid or abet, courts have applied the Restatement (Second) of Torts § 876(b) which holds that "for harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.". 2018 *Id.* at *10.

Applied to the aiding and abetting claim, this would mean that for a person to be found liable for aiding and abetting an unlawful discriminatory practice, they must have known an action was discriminatory and given "substantial assistance or encouragement" to the employer to accomplish that discrimination. *Id.* at *11. A failure to question or review the decision-making process behind the discriminatory action would not be sufficient to find a person liable for aiding or abetting. *Id.*

Under our facts, the Complaint itself fails to state certain acts of aiding and abetting on behalf of the Defendants, specifically who is the primary actor and who is the one aiding or abetting that primary actor. The only allegation the Plaintiff made with respect to the aiding and abetting claim is that "[t]he above-described acts of Defendants constitute aiding and abetting unlawful discriminatory practices." See ECF 1, at ¶ 214. *Holstein* states that "the HRA permits a cause of action against individuals who aid or abet an unlawful discriminatory act." *Holstein,* 461 S.E.2d at 476.

The complaint has failed to state claims against the Defendants acting in their capacity as individuals, which renders the claim void. Moreover, the Complaint actually states "[a]t all times relevant herein, Defendants acted through their agents, servants, and employees, each of who acted at all times relevant herein in the course and scope of their employment with and for Defendants." See ECF 1, at ¶ 16. As the Plaintiff alleged at all employees of the Defendant acted within their scope of employment, they cannot also allege that an employee of the Defendant was aiding and abetting in their capacity as an individual. Therefore, the Plaintiff's aiding and abetting claim must be dismissed with prejudice.

## V.      Conclusion

**WHEREFORE**, for the reasons stated above, this Defendant respectfully moves the Court to enter an Order dismissing all claims asserted against him with prejudice and for any and all other such relief as the Court deems appropriate and just under the circumstances.

MARSHALL UNIVERSITY JOAN C.
EDWARDS SCHOOL OF MEDICINE,

By counsel

s/Perry W. Oxley
Perry W. Oxley (WVSB #7211)
L.R. Sammons III (WVSB #9524)
Eric D. Salyers (WVSB # 13042)
ANSPACH MEEKS ELLENBERGER LLP
517 9th Street, Suite 1000
Huntington, West Virginia 25701
Phone: (304) 522-1138

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

REBECCA KLUG,

       Plaintiff,

v.                                 CIVIL ACTION NO.: 3:18-CV-00711
                                 JUDGE ROBERT C. CHAMBERS

MARSHALL UNIVERSITY
JOAN C. EDWARDS SCHOOL OF
MEDICINE, MARSHALL
UNIVERSITY BOARD OF GOVERNORS,
and FARID B. MOZAFFARI, an individual,

       Defendants.

## **CERTIFICATE OF SERVICE**

       The undersigned counsel for Defendant, Marshall University Board of Governors, served

the foregoing "***Memorandum of Law in Support of Defendant Marshall University Joan C.***

***Edwards School of Medicine's Motion to Dismiss"*** by electronically filing a true copy of the same

with the Clerk of the Court using the CM/ECF system on this **10th** day of **July**, **2018**:

Kristina Thomas Whiteaker
David L. Grubb
The Grubb Law Group
1114 Kanawha Boulevard, East
Charleston, WV  25301

                                    s/Perry W. Oxley
                                    Perry W. Oxley (WVSB #7211)
                                    L.R. Sammons III (WVSB #9524)
                                    Eric D. Salyers (WVSB # 13042)