# IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

REBECCA KLUG,

                    Plaintiff,

v.                                              CIVIL ACTION NO.   3:18-0711

MARSHALL UNIVERSITY
JOAN C. EDWARDS SCHOOL OF MEDICINE,
MARSHALL UNIVERSITY BOARD OF GOVERNORS,
and FARID B. MOZAFFARI, an individual,

                    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Motions to Dismiss by Farid B. Mozaffari (ECF No. 9), Marshall University Joan C. Edwards School of Medicine (ECF No. 11), and Marshall University Board of Governors. ECF No. 13. For the following reasons, the Court **GRANTS, in part,** and **DENIES, in part,** the motions of Defendants.

## I.
## FACTUAL ALLEGATIONS

In her Complaint, Plaintiff Rebecca Klug states that on July 1, 2013, she started as a resident in the general surgery residency program at the Marshall University Joan C. Edwards School of Medicine. *Compl.* at ¶46. During her first and second year of the residency program, Plaintiff asserts she was subjected to sexist comments. Additionally, she alleges that, during her second year, she was subjected to an abusive and hostile work environment. *Id*. at ¶64. Around January 2015, Plaintiff states, she lodged a verbal complaint with the Program Director and the Program Coordinator about her working conditions. *Id*. at ¶72. Plaintiff admits that, around this

same time, she had poor "In-Service Training" test scores. *Id*. at ¶74. When confronted with her scores by Defendant Farid B. Mozaffari, who was the Program Director of the General Surgery Training Program, Plaintiff asserts she again complained about her working environment. *Id*. at ¶¶52, 75, 78-79. Although Defendant Mozaffari spoke to the other residents about their conduct, Plaintiff states the conduct continued. *Id*. at ¶¶80-82.

Thereafter, at her April 2015 review, Plaintiff states that Defendant Mozaffari told her "she was 'causing a lot of problems'" and she would not advance to her third year. *Id*. at ¶83. Plaintiff appealed this decision, and she received a favorable decision. *Id*. at ¶¶84-85. Plaintiff was given the opportunity to advance if she met several requirements by June 2015. *Id*. at ¶¶87-88.

Unfortunately, on May 12, 2015, Plaintiff's husband committed suicide, and Plaintiff took off work until June 2. *Id*. at ¶¶90-92. After she returned to work, Plaintiff states that Defendant Mozaffari told her that, given what had happened, she would be moved to her third year. *Id*. at ¶103. However, the very next day, Defendant Mozaffari evaluated her and said he had received reports she was not showing up for work or was arriving late. *Id*. at ¶104. Although Plaintiff denied the allegations, Defendant Mozaffari told her she would have to repeat her second year. *Id*. at ¶¶105, 107. He also placed Plaintiff on medical leave, pending a release by a psychologist. *Id*. at ¶108.[1] Plaintiff returned to work approximately one month later. *Id*. at ¶112. She did not appeal from this denial of her promotion. *Id*. at ¶113.

---

[1]"Plaintiff was treated for major depressive disorder, moderate and recurrent, generalized anxiety disorder, and a normal grief reaction." *Id*. at ¶111.

While repeating her second year, Plaintiff alleges that she was given less favorable treatment than the male residents, and she was subjected to increased abusive behavior from the Academic Chief Resident. *Id*. at ¶¶117-21.[2] In February 2016, Plaintiff claims she made a formal written complaint against him for abusive and discriminatory conduct. *Id*. at ¶125. On March 18, 2016, Plaintiff states that Defendant Mozaffari informed her that the Academic Chief Resident had been reprimanded and their schedules had been changed so they would not be working together. *Id*. at ¶128. Shortly thereafter, on March 28, 2016, Plaintiff received a letter providing that she was being discharged from the residency program because of her test scores. *Id*. at ¶¶129, 31. Defendant Mozaffari also told her it was thought she would not be a good surgeon. *Id*. at ¶130. Plaintiff alleges she believes male residents with similar test scores were not discharged from the program. *Id*. at ¶132.

Plaintiff appealed the decision, but the decision was upheld at the first two appeal levels. *Id*. at ¶137. Plaintiff's third level of appeal was to Dean Joseph Shapiro. *Id*. at ¶138. Plaintiff states that Dean Shapiro verbally told her she could work in the lab for a year and then she would be reinstated into the program. *Id*. at ¶¶140-41. Plaintiff claims she accepted the offer and worked as a post-doctoral research scientist in the lab. *Id*. at ¶¶141-43, 147. A few weeks after accepting the offer, Plaintiff states she received a letter upholding the Level I and Level II decisions. *Id*. at ¶144.

---

[2]Plaintiff also states that, after Plaintiff began repeating her second year, her father died, but she only took one day off for his funeral. *Id*. at ¶116.

In July 2017, it was suggested by the vice-chairman of the Department of Surgery that Plaintiff stay in the lab for an additional year. *Id*. at ¶149. She agreed and believed she would return to the surgery residency program in June 2018. *Id*. at ¶¶149-52. However, in the Spring of 2018, Plaintiff said she was informed that she was not welcome back in the program. *Id*. at ¶153. As a result, Plaintiff filed this action for sexual harassment and hostile educational environment in violation of Title IX of the Educational Amendments Act of 1972, 20 U.S.C. § 1681 et seq. (Title IX), retaliation in violation of Title IX, breach of contract, sex discrimination under the West Virginia Human Rights Act (WVHRA), disability discrimination under the WVHRA, and aiding and abetting unlawful discriminatory practices. Defendants move to dismiss these claims.

## II.
## STANDARD OF REVIEW

Under the landmark decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), courts must look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court

reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

# III.
# DISCUSSION

## A.
## Statute of Limitations

The first argument raised by all three Defendants is that Plaintiff's claims must be dismissed because her action was filed outside the two-year statute of limitations. *See* W. Va. Code § 55-2-12.[3] As Plaintiff claims she received her termination letter on March 28, 2016, Defendants assert that the statute of limitations ordinarily would expire on March 28, 2018. However, as Plaintiff is suing a governmental agency, West Virginia Code § 55-17-3 requires the agency to receive thirty days' notice before a complaint can be filed.[4] To prevent plaintiffs from being penalized by the notice requirement, the statute further tolls the statute of limitations for a period of thirty days after receipt of the notice of the claim. W. Va. Code § 55-17-3(a)(2).[5]

---

[3]In relevant part, West Virginia § 55-2-12 provides: "Every personal action for which no limitation is otherwise prescribed shall be brought: . . . (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries[.]" W. Va. Code § 55-2-12(b).

[4]Subsection (a) of West Virginia Code § 55-17-3 provides, in part: "at least thirty days prior to the institution of an action against a government agency, the complaining party . . . must provide the chief officer of the government agency and the Attorney General written notice, by certified mail, return receipt requested, of the alleged claim and the relief desired." W. Va. Code § 55-17-3(a)(1), in part.

[5]West Virginia Code § 55-17-3(a)(2) states:

> (2) The written notice to the chief officer of the government agency and the Attorney General required by subdivision (1) of this subsection is considered to be provided on the date of mailing of the notice by certified mail, return receipt requested. If the written notice is provided to the chief officer of the government agency as required by subdivision (1) of this subsection, any applicable statute of limitations is tolled for thirty days from the date the notice is provided and, if received by the government agency as evidenced

In this case, Plaintiff submitted her notice of claim on March 21, 2018, and it was received on March 26. Allowing for the tolling period, Defendants calculate that Plaintiff had until April 25, 2018 to file her Complaint. However, Plaintiff did not file her Complaint until April 27, 2018. Therefore, Defendants assert her claims are barred.

On the other hand, Plaintiff insists her Complaint was timely because she appealed the March 28 decision, and she believed it would be reversed as it was the previous year. Additionally, Plaintiff understood that, if she agreed to work in the lab for a year, she would be returned to the surgery program. Thus, the March 28, 2016 letter was not a final, unequivocal decision. In fact, Plaintiff states she did not get an unequivocal decision until Spring of 2018, when she was told she would not be permitted back in the program. Taking these allegations as true, as this Court must at this point in the proceedings, the Court finds there clearly are disputed questions of fact as to when the statute of limitations began to run. Therefore, the Court **DENIES** Defendants' Motions to Dismiss on this ground. *See Heydarian v. JPMorgan Chase Bank, N.A.*, No. 3:14-20013, 2015 WL 2183131, at *2 (S.D. W. Va. May 8, 2015) (denying motion to dismiss when "[r]esolution of . . . factual issues is necessary to determine whether Plaintiff filed his complaint within the applicable statute of limitations").[6]

---

by the return receipt of the certified mail, for thirty days from the date of the returned receipt.

W. Va. Code § 55-17-3(a)(2).

[6]As the Court finds there is a factual dispute as to when the statute of limitations began, the Court does not address at this time Plaintiff's argument that the Court should apply equitable tolling to the limitation period or, in the alternative, she had two days remaining on the statute of limitations.

**B.**
**Defendant Marshall University**
**Joan C. Edwards School of Medicine**

Although the Court declines to dismiss this action on statute of limitations grounds, the Court finds that Defendant Marshall University Joan C. Edwards School of Medicine ("Defendant School of Medicine"), nevertheless, is entitled to dismissal on another ground. In its motion, Defendant School of Medicine also argues it must be dismissed because it is not a separate entity from Marshall University. Instead, Defendant School of Medicine asserts it is one in the same as Marshall University, and it is controlled by Marshall University's Board of Governors. Although Plaintiff opposes the motion and seeks discovery on the relationship between the two Defendants, the Court finds such discovery unnecessary.

Through a variety of statutory enactments, the West Virginia Legislature makes it clear that Defendant School of Medicine falls under the umbrella and jurisdiction of the Marshall University Board of Governors. For instance, in establishing the powers and duties of governing boards generally, West Virginia's Legislature has vested the boards with a wide range of duties, including the responsibility to "[d]etermine, control, supervise and manage the financial, business and education policies and affairs of the state institution of higher education under its jurisdiction[.]" W. Va. Code § 18B-2A-4(a). In specifically referencing the State's medical schools, the Legislature in West Virginia Code § 18B-3-1 gives the governing boards both flexibility and autonomy, and provides it is the governing boards that are ultimately "accountable to the Legislature, the Governor and the citizens of West Virginia for meeting the established state goals, objectives and priorities set forth" in specific legislation. W. Va. Code § 18B-3-1(f). Similarly, in establishing medical malpractice insurance requirements for West Virginia's medical

schools, the Legislature provided in West Virginia Code § 18B-5-10(d)(1) that the medical schools, "under the jurisdiction of the governing boards" and West Virginia State Board of Risk and Insurance Management may make certain separate agreements, and the governing boards have the authority over all medical malpractice claims. W. Va. Code § 18B-5-10(d)(1), (2), in part.[7] It is further the responsibility of the "governing boards" to submit a proposed self-insurance retention program to the state Insurance Commissioner for review[.]" *Id*. at § 18B-5-10(f), in part. Given the statutory framework between the Marshall University Board of Governors and the School of Medicine, the Court agrees with Defendant School of Medicine that it is not a separate entity from the University. *Compare with Al-Asbahi v. W. Va. Univ. Bd. of Governors*, No. 1:15CV144, 2017 WL 402983, at *9 (N.D. W. Va. Jan. 30, 2017), aff'd, 724 F. App'x 266 (4th Cir. 2018) (finding that WVU's School of Pharmacy (SOP) "is simply a component of West Virginia University,

---

[7]Subsection (d) provides, in full:

(d) Therefore, to aid the medical and other health professional schools in meeting these goals and objectives, the following program is authorized:

(1) Upon the agreement of the West Virginia State Board of Risk and Insurance Management, the health professionals schools *under the jurisdiction of the governing boards of Marshall University*, West Virginia University and the West Virginia School of Osteopathic Medicine, respectively, may participate, separately, in a self-insurance retention program in conjunction with the state insurance program administered by the West Virginia State Board of Risk and Insurance Management to provide medical professional liability coverage to its health care professionals and students.

(2) In administering the self-insurance retention program, *each governing board* has the authority to administer, manage and/or settle its own medical professional liability insurance claims.

W. Va. Code § 18B-5-10(d)(1), (2) (italics added).

organized and ultimately managed by the WVU Board. As such, a suit against the SOP is a suit against the WVU Board, and the SOP cannot be subject to suit as a separate entity." (Citation omitted)). Therefore, the Court **GRANTS** its Motion to Dismiss as it cannot be sued separately from the Marshall University Board of Governors.

**C.**

**Defendant Mozaffari**

Turning next to the motion by Defendant Mozaffari, he argues the claims against him must be dismissed for a variety of reasons. Initially, Defendant Mozaffari moves to dismiss Plaintiff's claims against him under Title IX for sexual harassment, hostile educational environment, and retaliation because they cannot be brought against an individual. Title IX generally provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). In her Response, Plaintiff agrees that Defendant Mozaffari may not be held liable under Title IX in his individual capacity, but she argues without support that her claims should be maintained against him in his official capacity. However, contrary to Plaintiff's position, Title IX "has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals" because individuals are not the recipients of federal funds as contemplated by the statute. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009); *see also Doe v. Bd. of Educ. of Prince George's Cty.*, 605 F. App'x 159, 165 n.8 (4th Cir. 2015) (recognizing in a footnote that a Title IX claim is "properly pursued against the Board only" not an individual (citing *Hartley v. Parnell*, 193 F.3d 1263, 1270 (11th Cir. 1999) ("Individual school officials . . . may not be held liable under Title IX."))).

Therefore, as Defendant Mozaffari cannot be sued under the statute, the Court **GRANTS** Defendant Mozaffari's motion to dismiss the Title IX claims against him.

Next, Defendant Mozaffari asserts Plaintiff only brought claims against him in his official capacity which are subject to sovereign immunity under the Eleventh Amendment. He also argues, however, that he is entitled to qualified immunity regarding Plaintiff's claims of sex and disability discrimination under the WVHRA. Qualified immunity is a defense to claims seeking to hold an individual defendant personally liable while that individual is acting in his or her official capacity. *See Lane v. Franks*, 573 U.S. 228, 243 (2014) (stating under the doctrine of qualified immunity "courts may not award damages against a government official in his personal capacity" except in certain circumstances). In her Response, Plaintiff contends she has sued Defendant Mozaffari in both his official and individual capacity.

Although in this case Plaintiff has identified Defendant Mozaffari as "an individual" in the style of the case, this description is not fully dispositive of the capacity in which Defendant Mozaffari is being sued. *See generally* Syl. Pt. 1, *Marion v. Chandler*, 81 S.E.2d 89 (W. Va. 1954)[8] ("Whether words used in connection with the name of a plaintiff or a defendant in a case are to be considered as descriptive of the person, or of the character in which he sues or is sued, is to be determined from all the allegations of the pleading filed by the plaintiff."); *see also Hoover v. Moran*, 662 S.E.2d 711, 716 (2008) (quoting Syllabus Point 1 of *Marion*, and also noting

---

[8]Overruled on other grounds, *Jackson v. Brown*, 801 S.E.2d 194 (W. Va. 2017).

that the Court previously has stated "that '[u]nder Rule 9(a) [of the] West Virginia Rules of Civil Procedure, it is not necessary to aver the capacity of a party to sue or be sued'" (citation omitted)).[9] Therefore, the Court looks to the allegations in the Complaint, and the Court applies the standard set forth by the Fourth Circuit in *Biggs v. Meadows*, 66 F.3d 56 (4th Cir. 1995). In *Biggs*, the Fourth Circuit stated that, "when a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." 66 F.3d at 61. Applying this test, the Court has no difficulty finding Plaintiff sued Defendant Mozaffari in both capacities.

Specifically, Plaintiff alleges in her Complaint that Defendant Mozaffari treated her differently than he did male residents who received similar test scores. *Compl.* at ¶¶75, 132. She also alleges "Defendants" subjected her to a hostile work environment, harassment, and unlawful disability and sex discrimination in violation of the WVHRA. *Id.* at ¶¶206-07, 210-211. The nature of the conduct asserted in these allegations suggests Plaintiff intended to sue Defendant Mozaffari in his personal capacity, as these actions are not alleged to have occurred pursuant to a governmental policy or custom. *See Biggs*, 66 F.3d at 61 (providing that one factor a court many consider is a failure by the plaintiff "to allege that the defendant acted in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the face of the complaint" (citations omitted)). Additionally, Plaintiff seeks both compensatory and punitive

---

[9]Rule 9(a) of the West Virginia Rules of Civil Procedure provides, in part: "It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party." W. Va. R. Civ. P. 9(a), in part.

damages. These damages indicate Plaintiff intended to sue Defendant Mozaffari in his personal capacity as those remedies are not available in official capacity suits. *See id.* ("Another indication that suit has been brought against a state actor personally may be a plaintiff's request for compensatory or punitive damages, since such relief is unavailable in official capacity suits." (Citations omitted)). Further, the fact Defendant Mozaffari argues he is entitled to qualified immunity, suggests he considers himself to be sued in his individual capacity. *See id.* (stating, "[b]ecause qualified immunity is available only in a personal capacity suit, the assertion of that defense indicates that the defendant interpreted the plaintiff's action as being against him personally" (citations omitted)). Accordingly, given these allegations and the defense raised, the Court finds Plaintiff has included claims against Defendant Mozaffari in his personal capacity in the Complaint.

Turning next to the question of whether Defendant Mozaffari is entitled to qualified immunity for these claims, the Court recognizes that where, as here, state law claims are at issue, "the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law." *Ferri v. Ackerman*, 444 U.S. 193, 198 (1979) (citing U.S. Const., art. VI, cl. 2). Under West Virginia's qualified immunity doctrine, "the discretionary actions of government agencies, officials and employees performed in an official capacity are shielded from civil liability so long as the actions do not violate a clearly established law or constitutional duty" of which a reasonable person would have known. *W. Va. State Police v. Hughes*, 796 S.E.2d 193, 198 (W. Va. 2017) (footnote with citations omitted).[10] Given qualified

---

[10]As applied to this case, the parties do not make any argument that the state rules conflict with the federal rules. Indeed, in *Bennett v. Coffman*, 361 S.E.2d 465 (W. Va. 1987), the West Virginia Supreme Court relied upon the standard set forth in *Harlow v. Fitzgerald*, 457 U.S. 800

immunity's broad scope, it "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id*. (footnote with citations omitted). Where discretionary acts are at issue, the West Virginia Supreme Court explained in Syllabus Points 4 and 6 of *Clark v. Dunn*, 465 S.E.2d 374 (1995):

> 4. If a public officer is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority, and jurisdiction, he is not liable for negligence or other error in the making of that decision, at the suit of a private individual claiming to have been damaged thereby.

> \*        \*        \*

> 6. In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29–12A–1, et seq., and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.

Syl. Pts. 4 & 6, *Dunn*.

Here, Defendant Mozaffari argues he is protected by qualified immunity because he was acting within his discretionary authority in recommending Plaintiff's contract not be

---

(1982). *See* Syl. Pt., *Bennett* (providing, in part, "[g]overnment officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); *see also* Syl., *State v. Chase Sec., Inc.*, 424 S.E.2d 591 (W. Va. 1992) (stating, in part, "[a] public executive official who is acting within the scope of his authority . . . is entitled to qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known."). In *Chase Securities*, the West Virginia Supreme Court "found the *Bennett* holding to be overbroad, and stated that the holding of *Bennett* applied only to qualified immunity and not absolute immunity." *Maston v. Wagner*, 781 S.E.2d 936, 948 (W. Va. 2015) (citation omitted).

renewed. Plaintiff counters, however, that she alleged Defendant Mozaffari willfully and intentionally discriminated against her and he engaged in a pattern and practice of unlawful discrimination against women. Therefore, Plaintiff argues qualified immunity does not protect Defendant Mozaffari because his actions violated clearly established statutory and constitutional rights. Upon review, the Court agrees with Plaintiff. As Plaintiff's allegations include violations of clearly established rights regarding sex and disability discrimination that a reasonable person would have known, the Court denies Defendant Mozaffari's motion to dismiss these claims based upon qualified immunity.

Defendant Mozaffari also argues he cannot be held liable under a theory of supervisor liability for Plaintiff's state law claims as it is clear under West Virginia law that there is no supervisory liability for the civil rights violations of a subordinate. *See Robinson v. Pack*, 679 S.E.2d 660, 669 (W. Va. 2009) (holding "the issue of supervisory liability in connection with an alleged civil rights violation is clear: there is none"). However, Plaintiff insists Defendant Mozaffari can be held liable for his own actions as a supervisor for his alleged mishandling of Plaintiff's complaints regarding sex discrimination and harassment. *See e.g. Deakins v. Pack*, 957 F. Supp. 2d 703, 761 (S.D. W. Va. 2013) ("A supervisor's mere knowledge of a subordinate's unconstitutional conduct is not enough . . . . Section 1983 liability may be imposed upon a supervisor only on the basis of purposeful 'violations of his or her supervisory responsibilities.'" (quoting *Iqbal*, 556 U.S. at 676)). Here, in both her sex and disability claims under the WVHRA, Plaintiff alleges that "Defendants' supervisory and management personnel engaged in, perpetrated, and otherwise condoned" the discrimination, harassment, and other wrongful acts described in the Complaint. *Compl.* at ¶¶ 207, 211. Taking the Complaint as a whole in the light most favorable to

Plaintiff, the Court finds she has sufficiently alleged a claim against Defendant Mozaffari for his own actions as a supervisor.[11] Therefore, the Court denies his motion in this regard.

Defendant Mozaffari further argues that Plaintiff's breach of contract claim against him must be dismissed because he was not a party to the contract. In her Response, Plaintiff agrees. Therefore, the Court **GRANTS** Defendant Mozaffari's motion to dismiss the contract claim against him.

Finally, Defendant Mozaffari asserts Plaintiff's claim of aiding and abetting must be dismissed. The parties agree with the decision in *Larry v. Marion County Coal Co.*, 302 F. Supp. 3d 763 (N.D. W. Va. 2018), which predicted that the West Virginia Supreme Court would define "aid" and "abet" under the WVHRA as being consistent with the Restatement (Second) of Torts § 876(b). 302 F. Supp. 3d at 777. Section 876(b) provides that, "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other

---

[11]Likewise, the Court finds Plaintiff's allegations sufficient pursuant to the standard set forth in the context of § 1983 actions by the Fourth Circuit in *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994). In *Shaw*, the Fourth Circuit held, that supervisory liability can be established when a plaintiff demonstrates:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injuries suffered by the plaintiff.

13 F.3d at 799 (citations omitted).

so to conduct himself." Restatement (Second) of Torts § 876(b). Therefore, in the context of the WVHRA, the district court held that an individual may be found to be liable for aiding and abetting a discriminatory practice if that individual knows the act breaches a duty and the individual "gives substantial assistance or encouragement to" the discriminatory conduct of another. 302 F. Supp. 3d at 778. However, mere knowledge and a failure to sufficiently question certain conduct is not enough to demonstrate "substantial encouragement or assistance." *Id.* at 777-78 (citing *Failla v. City of Passaic*, 146 F.3d 149, 159 (3d Cir. 1998) ("Employees are not liable as aider and abettor merely because they had some role, or knowledge or involvement.") (internal quotation marks and other citation omitted).

In this case, Plaintiff alleges Defendant Mozaffari was the individual who informed her that her surgery residency was being terminated because it was decided she would not be a good surgeon. Although the decision purportedly hinged on her low test scores, Plaintiff claims, "that she was subjected to different rules and/or sanctions, based upon her sex and disability status" because male residents with similar scores, and one male resident who needed to take time off from the program for medical reasons, were not discharged from the program. *Compl.* at ¶¶130-35. Plaintiff also claims Defendant Mozaffari was aware of the discrimination and hostility she faced but, nevertheless, assisted in terminating her residency. Based upon these allegations, the Court finds Plaintiff has stated a sufficient claim for aiding and abetting to survive Defendant Mozaffari's motion.

## D.
## Defendant Marshall University Board of Governors
## and Defendant Mozaffari's Sovereign Immunity Arguments

Defendant Marshall University Board of Governors argues Plaintiff's claims under the WVHRA and Title IX are barred by sovereign immunity pursuant to the Eleventh Amendment of the United States Constitution[12] and Article VI, § 35 of the West Virginia Constitution.[13] Defendant Mozaffari also argues he is entitled to sovereign immunity in his official capacity. Under the doctrine, a state agency and a state official in his or her official capacity generally are protected from suits. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."). The parties do not dispute that Marshall University is a State agency. *See Zimmeck v. Marshall Univ. Bd. of Governors*, No. CIV.A. 3:13-14743, 2013 WL 5700591, at *6 (S.D. W. Va. Oct. 18, 2013) (stating "[t]he West Virginia Code confirms that Marshall University is a public institution and an agency or 'arm' of the state" (citations omitted)). However, Plaintiff argues her claims under the WVHRA falls within an exception to this immunity because she is seeking injunctive relief.[14]

---

[12]The Eleventh Amendment provides in relevant part that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State[.]" U.S. Const. amend. XI.

[13]Article VI, § 35 states, in part, that "West Virginia shall never be made defendant in any court of law or equity[.]" W. Va. Const. art. VI, § 35.

[14]There are three limited exceptions to sovereign immunity. They are "(1) a state may unequivocally announce its intention to subject itself to suit in federal court; (2) Congress may abrogate the State's immunity by statute; and (3) suits for prospective injunctive relief against state officials acting in violation of federal law avoid dismissal." *Kerr v. Marshall Univ. Bd. of Governors*, No. 2:14-CV-12333, 2015 WL 1405540, at *8 (S.D. W. Va. Feb. 4, 2015) (citations

In her Complaint, Plaintiff asks "this Court to enter a permanent injunction against Defendants ordering them to establish an ongoing discrimination training program for their employees, in order to prevent future discrimination;" and, "Plaintiff be reinstated in the surgery medical residency program[.]" *Compl.* at ¶¶ 2, 4 of Prayer for Relief. However, the Supreme Court stated in *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984), that "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." 465 U.S. at 121 (citation omitted). Although Plaintiff argues Defendants' actions violated her federally protected civil rights, this argument does not prevent sovereign immunity from barring her claim under the WVHRA. Therefore, the Court **DISMISSES WITHOUT PREJUDICE** the WVHRA claim against the Board of Governors and Defendant Mozaffari in his official capacity.

On the other hand, Plaintiff's claim under Title IX against the Board of Governors does survive. As stated by the Honorable John Preston Bailey in *Constitution Party of W. Va. v. Jezioro*, No. 2:08-CV-61, 2009 WL 10710235 (N.D. W. Va. Jan. 16, 2009), "[a] state official may be sued under the *Ex parte Young* doctrine where a plaintiff seeks prospective equitable relief for ongoing violations of federal law." 2009 WL 10710235, at *3 (citation omitted). The Court need only ask "'whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id.* (quoting *Verizon Md. Inc. v. Public Service Comm. of Md.*, 535 U.S. 635, 645 (2002)). Here, Plaintiff alleges, *inter alia*, that she was and continues to be discriminated based upon sex and she seeks an injunction directing Defendants to institute an

---

omitted), report and recommendation adopted, 2015 WL 1405537 (S.D. W. Va. Mar. 26, 2015), *aff'd*, 824 F.3d 62 (4th Cir. 2016).

ongoing discrimination training program to prevent future discrimination. Additionally, Plaintiff asserts Marshall University's residency program receives federal funding and is covered by Title IX. *See Litman v. George Mason Univ.*, 186 F.3d 544, 554 (4th Cir. 1999) (stating "by accepting Title IX funding, a state agrees to waive its Eleventh Amendment immunity"); *Kerr v. Marshall Univ. Bd. of Governors*, No. 2:14-CV-12333, 2015 WL 1405537, at *10 (S.D. W. Va. Mar. 26, 2015) (recognizing the Fourth Circuit's holding in *Litman* that receiving Title IX funding is an unambiguous waiver of Eleventh Amendment immunity). Therefore, sovereign immunity does not apply to this claim.

The Board of Governors next argues that Plaintiff's contract claim is barred by sovereign immunity. The Court agrees. As this Court stated in *Zimmeck*, "[r]egardless of the type of relief sought . . . Plaintiff's claim against Marshall University for breach of contract is barred by the Eleventh Amendment." 2013 WL 5700591, at *8 (citing *Sarkissian v. W. Va. Univ. Bd. of Governors*, No. CIV.A. 1:05CV144, 2007 WL 1308978, at *10 (N.D. W. Va. May 3, 2007) (finding Eleventh Amendment immunity applied to a breach of contract claim against West Virginia University)). Therefore, Plaintiff's breach of contract claim against the Board of Governors is **DISMISSED WITHOUT PREJUDICE.**

Lastly, like Defendant Mozaffari, the Board of Governors also argues that Plaintiff's claim for "aiding and abetting" must be dismissed against it. In the Complaint, Plaintiff asserts supervisory and management personnel engaged in activities that perpetrated, condoned, and ratified a discriminatory and hostile work environment. Taking these allegations in the light most favorable to Plaintiff, and given that the Board of Governors oversees the business and

educational affairs of Marshall University, the Court finds she has stated a plausible claim of aiding and abetting against the Board of Governors and **DENIES** its motion to dismiss this claim.

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** the Motion to Dismiss by Defendant Marshall University Joan C. Edwards School of Medicine and **DISMISSES** this Defendant from the action. ECF No. 11. The Court also **GRANTS** Defendant Farid B. Mozaffari Motion to Dismiss Plaintiff's Title IX claims, breach of contract claim, and WVHRA claims against him in his official capacity, but **DENIES** his motion as to Plaintiff's claims under the WVHRA in his individual capacity and her aiding and abetting claim. ECF No. 9. Finally, the Court **GRANTS** Defendant Marshall University Board of Governors' Motion to Dismiss to the WVHRA claims against it and the contract claim, but **DENIES** the motion as to Plaintiff's Title IX claim and the aiding and abetting claim. ECF No. 13. Plaintiff's claims under the WVHRA against Defendant Mozaffari in his official capacity and against the Board of Governors and Plaintiff's breach of contract claim against the Board of Governors are **DISMISSED WITHOUT PREJUDICE**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        March 27, 2019

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE