IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**REBECCA KLUG,**

      **Plaintiff,**

v.                                                         **Case No.: 3:18-cv-00711**

**MARSHALL UNIVERSITY
BOARD OF GOVERNORS, and
FARID B. MOZAFFARI, an individual,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

      Pending is Defendant Marshall University Board of Governors' Motion to Compel Discovery. (ECF No. 118). Plaintiff filed a response in opposition to the Motion, (ECF No. 129), and Defendant has filed a reply memorandum. (ECF No. 130). For the reasons that follow, the Court **GRANTS**, in part, and **DENIES**, in part, the Motion to Compel.

      Plaintiff alleges in this action that she was subjected to a discriminatory and hostile work environment in her surgical residency program at Marshall University Joan C. Edwards School of Medicine, which began in 2013 and ended in 2016. She further alleges that she was terminated from the program in retaliation for complaining about the discriminatory and hostile conditions. This discovery dispute pertains to a second set of discovery requests filed by Defendant.

      As a preliminary matter, the Court considers Plaintiff's argument that Defendant's Motion to Compel was not timely filed. Plaintiff served her responses to Defendant's second set of discovery on January 29, 2021, sending them to Defendant by United States

Mail. (ECF No. 101). If Defendant had received the responses on January 29, 2021, Defendant should have filed the Motion to Compel on March 1, 2021. However, Defendant states that it did not receive the discovery responses until February 2, 2021; therefore, the Motion to Compel was timely filed on March 4, 2021. The Court has no reason to doubt Defendant's representation; accordingly, the Motion to Compel was timely filed. With respect to Defendant's failure to make a good faith effort to confer, in this district, the failure to make a such an effort does not prevent the Court from considering the substance of the motion; however, it has, in the past, provided grounds for the Court to deny reasonable expenses if the movant is successful. Given that Defendant's motion was not entirely successful, reasonable expenses would not have been awarded in any event.

Defendant seeks to compel the following information:

**1.     Interrogatory No. 2**—Defendant asked Plaintiff "[h]ave you ever created a profile for any dating website or application? If so, please state the date you created such profile, the website or application the profile was created, and whether any romantic relationships resulted from said website or application." Plaintiff objected to the interrogatory on the grounds that the interrogatory was intended to harass her, sought irrelevant information, and invaded her privacy.

Defendant argues that it is entitled to this information, because Plaintiff has alleged emotional and mental distress, humiliation, anxiety, embarrassment, depression, aggravation, annoyance, inconvenience, and loss of enjoyment of life. (ECF No. 119 at 3-4). According to Defendant, "[p]art of the enjoyment of life is a relationship with a significant other." (*Id.* at 4). Plaintiff responds that Defendant is engaging in a "fishing expedition" after already having (1) reviewed Plaintiff's mental health care records, (2)

taken a lengthy deposition of Plaintiff, and (3) subjected Plaintiff to an extensive interview and examination by a forensic psychiatrist selected by Defendant. (ECF No. 129 at 3-4).

Federal Rule of Civil Procedure 26(b)(2) authorizes the court to limit the frequency or extent of discovery otherwise allowed by the federal rules when the discovery is cumulative, or when the party seeking discovery has had ample opportunity to obtain the information by discovery in the action. Defendant does not dispute Plaintiff's contention that it has conducted considerable discovery regarding Plaintiff's alleged damages. Consequently, Defendant could have sought direct information regarding Plaintiff's romantic attachments when deposing Plaintiff, or during her independent medical examination. Whether or not Plaintiff has created an on-line dating profile is inconsequential to the relevant issues, because how Plaintiff may have met a significant other does not provide any information about the quality of the relationship or its impact on Plaintiff's emotional condition. Given that Defendant has already had ample opportunity to investigate Plaintiff's romantic attachments using more effective discovery tools, the motion to compel a supplemental answer to Interrogatory 2 is **DENIED**.

**2.** **Request for Documents No. 2**—Defendant asked for "a privilege log based on text messages that have been redacted and/or are missing." (ECF No. 118-1 at 4). Defendant received a privilege log, which showed that many of the text messages were redacted because they contained third-party medical information. Defendant now complains about the redactions themselves and wants the redactions removed. Defendant further asserts that documents are clearly missing from the privilege log based on gaps in page numbers.

Plaintiff explains that the text messages in question were produced in 2019 in response to Defendant's first set of discovery requests, which asked for documents that

3

were relevant to, related to, or supportive of Plaintiff's liability claims, or might be used as exhibits at trial. (ECF No. 129 at 5). Plaintiff points out that Defendant never moved to compel unredacted copies of the messages at the time of their production and should not be permitted to convert the recent request for a privilege log into a request for the unredacted messages. (*Id.*). Plaintiff states that the redacted portions of the text messages contain medical information about her patients, which Plaintiff does not feel comfortable copying and disseminating. By way of compromise, she has agreed that Defendant may examine the text messages without the redactions. As for the alleged "missing" information, Plaintiff indicates that the gaps in the page numbers are due to the fact that she did not include those pages as part of her discovery response. In other words, they were not reflected in the privilege log, because Plaintiff never identified them as documents that were relevant to, related to, or supportive of her liability claims, or that might be used as exhibits at trial.

In response, Defendant argues that the medical information contained in the text messages belongs to Defendant, as the patients discussed in the messages were patients of Marshall University's residency program. (ECF No. 130 at 5-6). Therefore, Defendant asserts, Plaintiff is attempting to withhold information that Defendant has a right to receive.

Plaintiff is correct that Defendant asked only for a privilege log in Request No. 2, and that Plaintiff produced a privilege log; thereby, fully responding to the request. It is also true that Defendant does not complain about the log itself; rather, Defendant complains that the text messages were redacted in the first instance. However, Plaintiff's arguments are not particularly persuasive, because Defendant should not have had to request a privilege log at all. Pursuant to Fed. R. Civ. P. 26(b)(5)(A), Plaintiff was

obligated to supply a privilege log as to any information she was withholding from production at the time she responded to the original discovery request. Had Plaintiff fulfilled that obligation, Defendant would have known the reason for Plaintiff's failure to disclose all of the text messages and could have moved to compel the documents. Moreover, the Court agrees that the information Plaintiff seeks to withhold is information to which the Defendant has an equal, if not superior, claim as the messages pertain to patients of the Defendant's residency program. Accordingly, the motion to compel production of copies of unredacted text messages is **GRANTED**. Within **seven (7) days** of the date of this Order, Plaintiff shall provide Defendant with a copy of the unredacted messages to which a "patient medical information" privilege was asserted.

    **3.** **Request for Documents No. 6**—Defendant asked for all of Plaintiff's communications—including pictures exchanged—between her and Dr. Igor Wanko Mboumi. Plaintiff objected on the ground that the request was overly broad as it was not limited to any time frame, scope, or subject matter. She also claimed that the request sought irrelevant information.

    Defendant argues that it is entitled to this information, because Plaintiff listed Dr. Mboumi as a witness and Plaintiff's relationship with him may have had a bearing on her emotional state. (ECF No. 118-2 at 3). Defendant offered to limit the time frame of the request from January 1, 2013 to the present, but did not offer any limitations to scope or subject matter. In response, Plaintiff indicates that she told Defendant on March 1, 2021 that she does not intend to call Dr. Mboumi as a witness. (ECF No. 129 at 6). Plaintiff reiterates that Defendant has already received a "wealth of information" regarding Plaintiff's emotional condition during the relevant years; therefore, Defendant's "fishing expedition" into her communications with Dr. Mboumi is "overkill and is just an attempt

5

to harass and embarrass her." (ECF No. 129 at 7). In reply, Defendant claims that because Plaintiff had a romantic relationship with Dr. Mboumi during the relevant time frame, Defendant has a right to see all of their communications. (ECF No. 130 at 4).

As previously stated, Defendant has had ample opportunity to explore the nature of Plaintiff's romantic attachments and friendships, and their effect on her emotional condition. Moreover, as Dr. Mboumi has been withdrawn as a witness, Plaintiff's communications with him are far less relevant. The Court disagrees with Defendant that simply because Plaintiff had a romantic attachment to Dr. Mboumi, Defendant should be permitted to rifle through 5 ½ years of their communications. The request is clearly overly broad and is disproportional to the needs of the case. Therefore, the motion to compel a further response to this request is **DENIED**.

**4.     Request for Documents No. 7**—Defendant seeks the records from Plaintiff's and her husband's joint marriage counseling sessions. Defendant contends that they are relevant to Plaintiff's emotional state during her residency, while Plaintiff disputes the relevancy of the records. Plaintiff also indicates that Defendant has already asked Plaintiff about her marriage counseling and has deposed the physician who provided the counseling. (ECF No. 129 at 7-8).

Fed. R. Civ. P. 26(b)(1) describes the scope of discovery, stating that "[u]nless otherwise limited by court order: parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The court may limit discovery that is unreasonably cumulative or duplicative, when the party has had ample opportunity to obtain the information, and when discovery is outside the scope of Rule 26(b)(1). *See* Fed. R. Civ. P. 26(b)(2). The court may also grant a protective order under Rule 26(c), upon a showing of good cause,

to protect a party from annoyance, embarrassment, oppression, and undue burden and cost. Plaintiff argues that this document request seeks information outside the scope of Rule 26(b)(1), because the request is overly broad, harassing, constitutes an unreasonable invasion of her privacy, and is cumulative. Although Plaintiff does not specifically argue that the records are privileged from discovery, she does contend that they are confidential. (*Id.*).

Plaintiff asserts federal question jurisdiction in this case. Accordingly, under Fed. R. Evid. 501, whether a privilege attaches to the records must be analyzed under federal law. *See, e.g., PPM America, Inc. v. Marriott Corp.,* 152 F.R.D. 32, 34 (S.D.N.Y.1993). Federal common law does recognize a psychotherapist-patient privilege, *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996), which has been construed to include records of marriage counseling. *Curtis Conyers v. Marisa Cano*, No. CV203146JFWPLAX, 2020 WL 7084546, at *3 (C.D. Cal. Sept. 25, 2020). The privilege can be explicitly waived, by the patient's express authorization, or implicitly waived, as when a party to a civil action places his or her mental health at issue. *E.E.O.C. v. Dolgencorp, LLC*, No. 1:09CV700, 2011 WL 1260241, at *13 (M.D.N.C. Mar. 31, 2011) (collecting cases).

In addition to federal common law, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. 104-191, provides that an individual's mental health care records constitute protected health information subject to security and privacy standards. *See* 45 C.F.R. §164.102 *et. seq*. Most mental health care records are treated like any other health care record under HIPAA. However, "psychotherapy notes" receive additional protection; indeed, unlike the access given to other medical records, an individual does not have the automatic right to access his own psychotherapy notes. 45 C.F.R. §164.524(a)(1)(i). Under certain circumstances—such as when a treating mental

7

health care professional believes that access to the notes is reasonably likely to endanger the life or physical safety of the individual or another person—the individual may be denied permission to review his psychotherapy notes. 45 C.F.R. §164.524(a)(3)(i). Psychotherapy notes are defined narrowly under HIPAA, including only those notes made by a mental health care provider that document or analyze the contents of conversations occurring during counseling sessions, and that are separated from the rest of the individual's record. Psychotherapy notes expressly do **not** include "medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items: Diagnosis, functional status, the treatment plan, symptoms, prognosis, and progress to date." 45 C.F.R. §164.501. Notably, even with the added protection given to psychotherapy notes, HIPAA allows their disclosure to a third-party with a valid authorization, 45 C.F.R. §164.508(a)(1), and without an authorization when the disclosure is required by law. 45 C.F.R. §§164.508(a)(2)(ii), 164.512(a).

In this case, Plaintiff has waived her right to keep information regarding her marital counseling privileged. She has testified about the counseling and allowed her psychiatrist to testify about it, as well. Furthermore, she has placed her mental and emotional state in question by the allegations contained in her complaint. Undoubtedly, "[m]arital difficulties significant enough to prompt counseling are likely to have been an independent cause of emotional distress." *Tavares v. Lawrence & Mem'l Hosp.*, No. 3:11-CV-770 CSH, 2012 WL 4321961, at *10 (D. Conn. Sept. 20, 2012). Therefore, as Defendant is entitled to information regarding Plaintiff's marital strife, including information contained in the records, the motion to compel a response to this request is **GRANTED.** However, to limit the disclosure to the period of time that is most relevant to the claims

in this case, Plaintiff shall only be required to produce records prepared between January 1, 2013 and May 15, 2015. In addition, if the psychiatrist has separate notes documenting the conversations that occurred during the counseling sessions and wishes to provide a summary instead of the actual session notes, then the summary will be adequate to comply with this Order. Plaintiff is **ORDERED** to obtain and produce these records within **twenty-one (21) days** of the date of this Order.

5. **Request for Documents No. 9**—Defendant asked Plaintiff to produce "your application to sponsor Saeed Keshavarzian as a U.S. citizen." According to Defendant, this information has been obtained from another source. Therefore, the motion to compel a supplemental response to this request has been withdrawn by Defendant. (ECF No. 130 at 6).

6. **Request for Documents No. 10**—Defendant asked for all writings and records Plaintiff prepared during her residency program. Not surprisingly, Plaintiff objected to the request as overly broad. The parties discussed limitations to the request, and Plaintiff confirmed that she had already produced all writings related to her residency. Therefore, the motion to compel a further response to this request is **DENIED** as moot.

7. **Request for Documents No. 18**—Defendant requested information regarding any payment Plaintiff received as a result of her husband's death in May 2015. Plaintiff states that she did not receive a death payment. Defendant has accepted that response and has withdrawn the motion to compel a supplemental answer to this request. (ECF No. 130 at 6).

8. **Request for Documents No. 19**—Defendant sought a copy of all of Plaintiff's cell phone records from July 1, 2013 through December 31, 2018. The fact that

9

Plaintiff filed a lawsuit does not give the adverse party carte blanche to review every call Plaintiff made in a 5 ½-year period. This request is simply not proportional to the needs of the case and is overly broad. In its reply memorandum, Defendant provides one example of how the call records might be relevant. Defendant asserts that Plaintiff claims that she was forced to return to work prematurely by her chief resident, Dr. Abomaali.[1] Dr. Abomaali denies engaging in such a call. Defendant argues that it should be permitted to discover from Plaintiff's cell phone records whether a telephone call took place between Plaintiff and Dr. Abomaali. (*Id.* at 6-7). Accordingly, the motion to compel all of the cell phone records is **DENIED**. However, the motion is **GRANTED** as to the call from Dr. Abomaali. Plaintiff is **ORDERED** to request from her cell phone carrier, within **three (3) business days**, the record of her calls on the day that she alleges Dr. Abomaali contacted her to demand her return to work. Within **three (3) business days** of receipt of that record, Plaintiff shall produce the record to Defendant.

      9.      **Request for Documents No. 20**—Defendant requested all of Plaintiff's bank statements for the period of July 1, 2013 to December 31, 2018. Defendant contends that these records are relevant to provide information regarding a vacation that Plaintiff scheduled but had to cancel, and that they would "lend insight as to her mental status during and after her residency program." (ECF No. 119 at 8-9). Plaintiff responds that she has previously advised Defendant that she cannot locate any records regarding the cancelled vacation. In addition, Plaintiff argues that the request is harassment and exceeds the scope of Rule 26.

      Defendant claims that the bank records are germane to show how and where

---

[1] Defendant spells the resident's name in two different ways. As the undersigned has no way of knowing which is the correct spelling, one of the two options was chosen for the purposes of this Order.

Plaintiff spent her time during the relevant years. (ECF No. 130 at 7). According to Defendant, a record of Plaintiff's location and purchases could refute her claims of being overworked and depressed. Defendant cites to three cases—none of which are from this district—which purportedly allow the production of such records to prove or disprove the location of a party. (ECF No. 130 at 7-8). Defendant's argument is entirely unavailing.

The cases cited by Defendant are not applicable to this case. In *Cooper v. Old Dominion Freight Line, Inc.*, No. 09-CV-2441 JAR, 2011 WL 251447, at *10 (D. Kan. Jan. 25, 2011), the records were compelled, because Plaintiff abandoned her objections to the request. In *Vai, Inc. v. Miller Energy Res., Inc.*, No. 11-CV-3906, 2012 WL 12897099, at *2 (E.D. Pa. Feb. 24, 2012), discovery was being conducted on the issue of whether the court had personal jurisdiction over a party. The location of the party during certain business dealings was key to the exercise of jurisdiction. Therefore, the court ordered the party to produce credit card records showing business-related expenditures. However, the party was not required to produce a record of personal credit card charges. Furthermore, the court found the request for the party's bank statements to be "inappropriate." *Id.* The last case, *Wellin v. Wellin*, No. 2:13-CV-1831-DCN, 2015 WL 5785709, at *29 (D.S.C. July 31, 2015), involved a family dispute over the assets, trusts, and estate of a deceased individual in which claims of undue influence and financial hardship were asserted. Because the alleged manipulation of the deceased, his competency, the disposition of his assets, and the motives of the family members were integral to the case, the court found that certain aspects of the parties' financial transactions were relevant. As such, the court ordered all of the parties to exchange statements reflecting their financial activity over a set period of years. However, the instant case has absolutely nothing to do with a family squabble over the alleged abuse

and dissipation of a deceased relative's estate. Requiring Plaintiff to provide records of her daily financial transactions over a 5 ½-year period is inappropriate considering the nature of this case.

Certainly, there are cases where the production of extensive financial records is necessary. This case is not one of them. Defendant's contention that Plaintiff should be compelled to produce years of bank statements, so that Defendant can historically track her every move and financial transaction, quite honestly, is outlandish. Defendant has already received Plaintiff's income tax returns and has collected other information related to Plaintiff's claim of lost wages. Requiring Plaintiff to produce financial records for tracking purposes is clearly not proportional to the needs of the case and is overly intrusive. Plaintiff filed a lawsuit seeking damages for emotional distress. However, that alone does not strip her of her right to privacy, nor does it open every aspect of her life to such intense scrutiny. Therefore, the motion to compel a supplemental answer to this request is **DENIED.**

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to counsel of record.

**ENTERED**: March 29, 2021

_____
Cheryl A. Eifert
United States Magistrate Judge