## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**REBECCA KLUG,**

      Plaintiff,

v.                                         Civil Action No.: 3:18-CV-00711
                                            Judge Robert C. Chambers

**MARSHALL UNIVERSITY**
**BOARD OF GOVERNORS,**
**and FARID B. MOZAFFARI, an individual,**

      Defendants.

### AFFIDAVIT OF KARA WILLENBURG

**STATE OF WEST VIRGINIA,**

**COUNTY OF CABELL, TO-WIT:**

I, Kara Willenburg, MD, being over 18 years of age and being of sound mind, on oath depose and voluntarily state and warrant as follows:

1. I am currently employed as the Assistant Program Director, Internal Medicine Residency Program; Section Chief, Infectious Diseases for the Marshall University Joan C. Edwards School of Medicine.

2. I was employed as the Assistant Program Director, Internal Medicine Residency Program; Section Chief, Infectious Diseases for the Marshall University Joan C. Edwards School of Medicine during the period of July 1, 2013 to July 1, 2018.

3. Dr. Klug was a pre-lim intern PGY1 with the Marshall University Joan C. Edwards School of Medicine from July 1, 2013 to June 30, 2014.

4. Dr. Klug was a categorical PGY2 with the Marshall University Joan C. Edwards School of Medicine from July 1, 2014 to June 30, 2015 and from July 1, 2015 to June 30, 2016.

5. I acted as an infectious disease consult to Dr. Klug for surgery patients.

6. I served as a member of the Ad Hoc Committee upon selection by Dr. Klug to review the non-renewal of Dr. Klug's residency contract and ensure due process on behalf of Dr. Klug.

7. Dr. Klug never complained to me regarding sexual harassment, a hostile work environment, or any other type of sex discrimination.

8. At no time during Dr. Klug's residency or employment with Marshall University Joan C. Edwards School of Medicine, or thereafter, did I ever witness or hear of any gender or disability motivated actions taken against Dr. Klug.

9. I have never encountered any bias against women in my work in the Marshall University Joan C. Edwards School of Medicine or in the Surgery Residency Program specifically.

10. As a member of the Ad Hoc Committee for the decision to not renew Dr. Klug's contract, I had access to her academic information, including her ABSITE scores, evaluations by other physicians, complaints against her, discussions by other members of the Clinical Competency Committee, and other information related to Dr. Klug's surgical residency.

11. Dr. Klug consistently worked over the allowable hour limit and had to be escorted to the door to prevent her from continuing to work.

12. Dr. Klug worked well past the hour limit because she was inefficient in her work.

13. Dr. Klug was a poor academic performer during her time in the surgery residency program, repeatedly scoring in the bottom 1st percentile on the ABSITE exam.

14. These low ABSITE scores qualified Dr. Klug for an Educational Enhancement Plan and a serious remediation plan.

15. Dr. Klug never completed the remediation plan.

16. Dr. Mozaffari offered Dr. Klug the chance to take additional time off after the death of her husband before returning to work, but she refused.

17. Multiple people in the surgery department were frustrated with Dr. Klug.

18. Dr. Klug's contract was ultimately non-renewed because she failed to accomplish what she was asked to do as a surgical resident.

19. I remember Dr. Rebecca Wolfer attending the Ad Hoc hearing in support of Dr. Klug. However, at the Ad Hoc hearing, it was clear that Dr. Wolfer was not aware of and did not consider Dr. Klug's academic insufficiencies.

20. The Ad Hoc Committee found no evidence of discrimination in reviewing Dr. Klug's appeal.

21. The Ad Hoc Committee found that Dr. Klug was given due process, that she was given the opportunity to remediate, and that she failed to do so.

22. The Ad Hoc Committee believed that it was not in Dr. Klug's best interest for her to continue in the general surgery residency program.

23. The Ad Hoc Committee did not take Dr. Klug's gender into consideration in reviewing her appeal.

24. Dr. Mozaffari was a good director of the General Surgery Program.

25. Prior to Dr. Mozaffari's arrival, the General Surgery Program was at risk of being shut down due to poor board pass rates.

26. Dr. Mozaffari improved the General Surgery Program to the point that the program was no longer at risk of being shut down.

27. Dr. Mozaffari was a good leader for the surgery residents, advocating for and protecting them as much as he could.

28. Dr. Mozaffari's goal was for each resident to become the best surgeon they could achieve.

29. At no time during Dr. Klug's residency or employment with Marshall University Joan C. Edwards School of Medicine, or thereafter, did I ever witness or hear of any discrimination by Dr. Mozaffari.

Further the Affiant Sayeth Not.

Dr. Kara Willenburg

Taken, subscribed, and sworn to, before me this 15 day of March, 2021.

My commission expires July 22, 2021.

Lisa J Maynard
Notary Public