# REBECCA KLUG

# V.

# MARSHALL UNIVERSITY BOARD OF GOVERNORS, ET AL.

## SUPPLEMENTAL EXPERT REPORT

## BY:

## PETER YOO, M.D.
### EXPERT WITNESS FOR MARSHALL UNIVERSITY

## MARCH 25, 2021

I. **Factual Background**

Dr. Klug started the Marshall University Surgical Residency Program as an intern/PGY-1 on July 1, 2013.

On February 24, 2014, Dr. Klug received her scores from the January, 2014 American Board of Surgery In Training Examination (ABSITE). Her raw score was 185 which is correlates to a score of 43%. This score was in the bottom 1 percentile compared her peers across the country. The minimum ABISTE score required for promotion was 55% for a PGY-1.[1] *See* Deposition of Farid Mozaffari, pg. 20.

On July 1, 2014, Dr. Klug started her second year in the program as a PGY-2. During this year, there were multiple nursing complaints regarding failures of professionalism on the part of Dr. Klug. *See* Deposition of Farid Mozaffari, pg. 27-30

In Dr. Klug's midpoint evaluation of her "first" second year, November 25, 2014, it was noted that she had some unsatisfactory evaluations and significant shortcomings in her completion of key mandatory administrative tasks. The successful completion of administrative tasks is clearly outlined by the Accreditation Council on Graduate Medical education (ACGME) as an area of core professional competency.[2] In the 2013 version of the assessment instrument provided to all surgical programs, Dr. Klug's performance was consistent with a critical failure in the Prof3 milestone. According to this rubric, critical failure in the Prof3 milestone is defined as: "This resident consistently fails to meet requirements for timely performance of administrative tasks and/or requires excessive reminders, follow-up, etc." Specific examples were elucidated in the deposition of Dr. Mozaffari. His deposition states that she had not completed the amount of SCORE (online weekly educational plan assignments) assignments that she should have completed at that time, as she had only completed a fourth of the required assignments. *See* Deposition of Farid Mozaffari, Exhibit 2. Additionally, she had only logged 97 surgical cases and had not logged any since January 2014 or 10 months. *See* Deposition of Farid Mozaffari, Exhibit 2. She is required to log 250 cases by the end of her second year per ABS In surgical residency training, this case logging is generally expected to be completed on a daily basis. Non-completion for over 10 months is highly unusual and delinquent by any standard. . *See* Deposition of Farid Mozaffari, Exhibit 2. *See* Deposition of Farid Mozaffari, Exhibit 2. It was noted then that Dr. Klug was not ready for PGY-3. *See* Deposition of Farid Mozaffari, Exhibit 2, pg. 35-36.

On her February and March 2015 evaluations, Chief Resident Dr. Abolmaali noted that Dr. Klug needs to "work on her medical knowledge and work on relationship with attendings." Attending Dr. Canterbury noted Dr. Klug "has trouble prioritizing." Additionally, attending Dr. Walker noted Dr. Klug "needs to increase depth of knowledge base – knows enough to function

---

[1] The minimum ABSITE score was not the only criteria for promotion. Moreover, if a resident's only deficiency was their ABSITE score, they were still promoted per ACGME guidelines. *See* Deposition of Farid Mozaffari, pg. 23. Essentially, poor ABSITE scores triggered remediation. *See* Deposition of Farid Mozaffari, pg. 24.

[2] The ACGME provides a common rubric to assess the performance and progress of each trainee according to a nationally applied standard. There are six areas of core competence (interpersonal and communication skills, medical knowledge, patient care, practice-based learning and improvement, systems based practice, and professionalism). Trainees are judged in sixteen sub-areas of these competencies according to a scale from 0 (critical fail, not within the spectrum of developing competence) to 4 (graduation target).

day to day but needs much more for true critical problem solving." These observations speak directly to areas of deficiency with regard to medical knowledge, interpersonal and communication skills, and patient care. These are all areas of core competency as defined by the ACGME and are provided as the basis of promotion according to the ACGME milestones.

On March 3, 2015, Dr. Klug received a 288 on her ABSITE, which correlates to a score of 52% and she scored in the bottom 1 percentile of trainees at her level across the country. The minimum ABSITE score required for promotion was 60% for a PGY-2. *See* Deposition of Farid Mozaffari, pg. 20.

On March 12, 2015, Dr. Klug was given a warning letter that she was to repeat the PGY 2 level. *See* Deposition of Farid Mozaffari, Exhibit 4, Klug000297. Therein, it was noted "[b]ecause there was no improvement from last year's ABSITE, which was well below national average and what is expected of our residents, the lack of keeping up with your scheduled reading assignments and didactics, not turning in your research project as required, the [Clinical Competency] Committee decided that you will not be promoted to the PGY 3 level, but remain at the PGY 2 level." *See* Deposition of Farid Mozaffari, Exhibit 4, Klug000297. A plan of action was drafted for Dr. Klug to meet with a mentor weekly, enroll in the Marshall Help Program to identify possible test taking problems, and would be given weekly exams. These measures represent an extraordinary level of support for the trainee. *See* Deposition of Farid Mozaffari, Exhibit 4, Klug000297. Dr. Klug challenged this decision. *See* Klug000298.

On April 2, 2015, Dr. Klug was given an ABSITE remediation plan. In her remediation plan, Dr. Klug was to complete a two-paragraph summary on all areas missed on ABSITE. Dr. Klug had approximately 81 topics to work on. She was required to turn in at least half of the topics by June 30, 2015 and the other half by September 30, 2015. Additionally, Dr. Klug was required to attend and participate in at least 90% of Wednesday SCORE lectures/discussions, as well as score 70% or above on Wednesday exams. *See* Klug000299.

On April 9, 2015, the Ad Hoc Appeal Committee upheld Dr. Klug's appeal of her non-promotion, however, they noted "granting your request for appeal does not guarantee subsequent advancement nor remove any responsibility you may have to successfully remediate any deficiencies within the required time frame according to a written plan." *See* Klug000301 – 302.

On April 20, 2015, Dr. Klug was given an Educational Enhancement Program for Poor Academic Performance. Dr. Klug was required to do the following:

Required Work Effort:
1. 100% completion of the weekly SCORE curriculum (catch up from last year to present)
2. 100% attendance at all conferences (except scheduled vacation)
3. Minimum average score of 70% on weekly exams
4. Strict adherence to the 80 hour work week and call restrictions/regulation without any exceptions (Dr. Klug herself is responsible for keeping track of her duty hours and reporting of her duty hours within 24 hours of completing her daily work. Any violation of the 80-hour work week has to be immediately reported to the program director and to the administrative chief.)

5. Timely completion of all administrative duties, charts, and documentations.
6. Maintaining updated ACGME case logs
7. Weekly meetings with Dr. Amanda Arrington, to be scheduled and adhered to by Dr. Klug. Dr. Arrington will give Dr. Klug assigned reading and work to be done and will monitor her progress and participation and report back to the Program Director on a weekly basis
8. All conditions listed above are in addition to the criteria for promotion from PGY-2 to PGY-3 that is already stated in the resident hand book and required by the American Board of Surgery as well as the requirements of the ABSITE policy.
   a. Write and submit an abstract on research topic chosen as a PGY 1 to a state or national meeting for poster or oral presentation
   b. Completion of ASTS Transplant Curriculum on SCORE
   c. Exposure or participation in 50% of the SCORE Curriculum Procedures (see attachment for procedures)
   d. ABS Requirement – resident will be required to have performed 250 cases by the conclusion of the PGY 2 year
   e. PGY 2 must prove competency by acquiring the requisite number of procedures under direct supervision by a PGY 4 or 5 resident or an attending physician
   f. ABSITE Policy – Complete 2 paragraph summary, single spaced, on all areas missed on ABSITE (Do not include any topic that includes APPLIED SCIENCE or is duplicated). You have approximately 81 topics that you need to work on. At least half of the topics should be turned in the Program Coordinator by June 20 and the other half by September 30, 2015. This is to be your summary of a topic, not cut and pasted from another source.
   g. Dr. Klug will continue to be excused from work duties for any scheduled doctor's appointments.

All of these requirements must be completed by June 15, 2015. In late June, Dr. Klug will be given an exam similar to ABSITE and must obtain a minimum of 65% correct answers. Failure to comply with any of the conditions listed above will result in non-promotion to PGY-3 and repeating PGY-2 year. Signed by both Dr. Mozaffari and Dr. Klug on 4/20/2015.

*See* Klug000304 – 305.

On or about May 12, 2015, her husband committed suicide, and her remediation requirements were put on hold. She took a brief leave of absence to grieve. On or about May 26, 2015, she contacted Dr. Mozaffari by email to inform him that she wanted to return to work on June 1, 2015. She thanked him for his support and stated that return to work would "be a welcome distraction."

On or about June 23, 2015, Dr. Klug had her end of year performance review at the conclusion of PGY-2. *See* Deposition of Farid Mozaffari, Exhibit 3. Therein, it was noted she had only completed 67% of the required readings and exams in the SCORE curriculum. *See* Deposition of Farid Mozaffari, Exhibit 3. Moreover, she was specifically required to compete the ASTS Transplant Module but failed to do so. *See* Deposition of Farid Mozaffari, Exhibit 3. Further, Dr.

4

Klug had "not done anything on research" toward the completion of the required research component of her training program. *See* Deposition of Farid Mozaffari, Exhibit 3. Additionally, Dr. Klug had not logged any surgical cases since March 30, 2015. *See* Deposition of Farid Mozaffari, Exhibit 3. Additionally, Dr. Klug completed her Endoscopy rotation with only 29 cases, short 56 cases of the required number, 85, for Endoscopy. *See* Deposition of Farid Mozaffari, Exhibit 3. Additionally, Dr. Klug was 2.5 weeks behind in logging her duty hours and logged 3 separate duty hour violations without the required explanation. *See* Deposition of Farid Mozaffari, Exhibit 3.

Problematically, she had not logged experience with sufficient surgical cases by the conclusion of PGY2. This indicates that over the two years of her initial training, she only documents participation in 122 surgical cases. The American Board of Surgery, which is the certifying body for our specialty, requires that all residents document participation in at least 250 surgical cases before promotion to PGY3. Based on this criterion, Dr. Klug was not eligible for promotion to PGY-3.

Additionally, her written assessments described persistent deficiencies in medical knowledge, professionalism, and patient care. Because of the overwhelming documentation indicating her inadequate performance, the recommendation of the C3 committee to Dr. Mozaffari was that she not be promoted to PGY-3. *See* Deposition of Farid Mozaffari, Exhibit 3.

On June 24, 2015, Dr. Mozaffari authored a letter to Dr. Klug noting that he believed she attempted to return to work too early. Dr. Mozaffari noted "when you were asked if you were OK or needed anything, you always replied no." Dr. Mozaffari, in these instances, was offering Dr. Klug support, which she declined. Dr. Mozaffari noted that that morning Dr. Klug agreed she was not ready to return to work and requested additional time off to which he agreed. Dr. Mozaffari also asked her to see a therapist of her choice and provide him with a statement from her therapist that she was ready to return to work prior to her return.

On July 10, 2015, Dr. Mozaffari again authored a letter to Dr. Klug. Therein, he noted she was approved for paid leave until August 1, 2015. Additionally, he added some requirements for Dr. Klug to complete prior to her return to work on August 1, 2015:

- Please bring your ACGME case logs up to date and keep them up to date at all times.
- Give me an outline of a personal study plan for 2015-2016.
- Establish an area or topic of research project and complete the CITI training and request IRB if applicable.
- Complete the ABS Flexible Endoscopy Curriculum – Level One (Curriculum attached)
- Complete the Intro to the Practice of Medicine Curriculum modules 2,4,8,9,10,21,22,24 and 25 (information attached).

These requirements were in addition to her previous assignments. Additionally, Dr. Mozaffari reminded her deadlines for the completion of her previous assignments will be moved to November 1, 2015 due to her leave of absence. *See* Klug000308.

On January 4, 2016, Dr. Klug received her mid-year evaluation. Therein, it was noted she only had an 86% attendance at weekly conferences and failed to achieve the 100% requirement to which she had previously agreed. Additionally, Dr. Klug had still not made progress on her research, and as yet had not prepared or submitted a research abstract as required and she agreed. These items were due November 1, 2015. It was also noted that she had not logged all of her cases to that point. Additionally, the ABSITE was discussed and she was informed she needed to achieve a 60% on the ABSITE. Additionally, she was frequently delinquent on medical records lists and had multiple duty hour violations. *See* Klug000311-312. She was informed not to have any further duty hour violations. Dr. Mozaffari implored with her to improve her communication skills and not withdraw from others. Additionally, she was not meeting weekly with her mentor, Dr. Arrington, as required. She informed Dr. Mozaffari that she did not trust him. Thus, Dr. Mozaffari informed her that he would abstain from making decisions on her education and will let the C3 committee make those decisions without his input. *See* MUBOG000486-488.

On February 8, 2016, Dr. Klug made a formal complaint about Dr. Yung bullying her. ON February 19, 2016, Donna Webb met with Dr. Klug, where the Dr. Yung situation was discussed and she recognized she had "not been following the agreement she signed, but stated she had a lot going on." *See* Klug000321.

On or about February 25, 2016, Donna Webb met with Dr. Klug, where Dr. Klug recognized she will be held accountable for not starting sooner with having a study plan and working on outlines. Dr. Klug also met with Human Resources regarding her complaint against Dr. Yung and was happy with the outcome of separating her and Dr. Yung. "[T]his is all she expected or wanted."

On March 2, 2016, Dr. Klug received a 305 on her ABSITE, which is correlates to a score of 54% and she scored in the bottom 1 percentile compared to her peers. The minimum ABSITE score required for promotion was 60% for a PGY-2. *See* Deposition of Farid Mozaffari, pg. 20.

On March 4, 2016, Donna Webb emailed Dr. Klug reminding her to write her research abstract to satisfy the program's requirement to comply standards of the ACGME. *See* Klug000315. This was an attempt to help Dr. Klug and remind her to resolve this deficiency.

On March 18, 2016, Dr. Klug was informed by letter that Dr. Yung had been reprimanded and informed that any similar behavior will put him at risk of being removed from the program. She was informed that her allegations were forwarded to the Title IX office and that Dr. Yung's rotation schedule was changed so that there would be no interaction between her and Dr. Yung. *See* Klug000316.

On March 23, 2016, Dr. Klug emailed Dr. Arrington, acknowledging that she still needed to complete her two paragraphs per topic missed on the ABSITE, 100 questions per week from true learn, complete chapters on transplant prior to May, complete her IRB submission, and submit her abstract. *See* MUBOG001502.

On March 28, 2016, Dr. Klug was notified that her contract for her residency training will not be renewed for the academic year July 1, 2016 through June 30, 2017. The C3 committee believed that Dr. Klug would not be able to pass her boards and that she would not be able to ***demonstrate sufficient professional ability to practice surgery competently and independently.***

*See* Klug000317. Dr. Klug was delivered the news of this letter in person, where Dr. Klug disclosed she was recently diagnosed with ADD. It does not appear from the record that she ever previously disclosed this condition to Dr. Mozaffari, nor is it apparent that she ever requested any specific accommodations prior to this adverse action being taken against her.

On April 1, 2016, Dr. Klug appealed the non-renewal decision. The guidelines outlined by the GME office provide that her appeal at this stage be submitted directly to an Ad Hoc Committee of the GME Committee. That ad hoc committee would be formed at the institutional level. However, she requested an additional, lower level of appeal at the level of the department's Clinical Competency Committee (C3) prior to presenting her case to the Ad Hoc Committee. *See* Klug 003357. Dr. Klug's request to present to the C3 committee first, giving her an extra level of appeal, was granted.

On April 6, 2016, Dr. Klug's appeal to the C3 committee was held. The C3 committee consisted of Dr. Denning, Dr. Thompson, Dr. Arrington, Dr. Bown, Dr. Harrison, Dr. Robinson, Dr. Walker, and Kim Mann (Trauma Nurse Practitioner). *See* MUBOG000505. Dr. Denning chaired the committee and Dr. Klug presented her case. Therein, Dr. Klug "accepted that she had deficiencies," admitted "she had a lack of communication with Dr. Mozaffari," and "did not adhere to Dr. Arrington's study plan or meetings with her."

In the C3 committee discussions, Dr. Arrington noted that Dr. Klug did not fulfill her study plan. She believed that they should stick to the original decision. Dr. Bown noted that Dr. Klug's deficiencies remain unresolved without improvement, and that she was aware last July that her status was in jeopardy. Dr. Thompson noted that she doesn't know patients as well as her subordinates (PGY1 interns) do. Dr. Robinson noted that she had poor H&P (history and physical, which is essentially poor note taking and not giving sufficient information on patient), old labs, she was disorganized, and that a patient could have died. Dr. Denning noted that she did not meet regularly with her mentor, has not improved on her problems, deteriorated rather than progressed, was disorganized, could not handle stress, had significant problems with time management, multiple problems with overages on her work hours, deficient in assigned tasks from the program, and many doubted she could be a surgeon. *See* MUBOG000514.

On April 8, 2016, the C3 committee determined the non-renewal of her contract should stand. *See* Klug00318.

On April 15, 2016, Dr. Klug appealed the decision of the C3 committee to the Ad Hoc Committee. *See* Klug003377.

On April 27, 2016, the Ad Hoc Appeals Committee heard the grievance filed by Dr. Klug appealing the decision of the Surgery Department regarding non-renewal of her contract for the 2016-2017 academic year. The Ad Hoc Committee consisted of Dr. Kevin Conaway, Dr. Maria Trio Tirona, Dr. Ellen Thompson, Dr. Kara Willenburg, and Dr. Matthew Curry. Dr. Conaway was the chair of the committee. Drs. Tirona and Thompson were chosen by the GME office. Drs. Willenburg and Curry were chosen by Dr. Klug. *See* Klug003386. Dr. Klug, Dr. Mozaffari and witnesses called by both parties presented statements. After deliberation, the Committee decided:

1. The resident's performance was judged fairly using common criteria established by the Program;

7

2. The resident was made aware of specific deficiencies to be corrected;
3. The resident was instructed to correct the deficiencies;
4. The resident was aware that the actions of the Program Director constituted remediation;
5. The resident's performance was re-evaluated according to established criteria common to the Program;
6. There is no evidence that would indicate the original action of non-renewal should be overturned.

The appeal was denied and decision to non-renew upheld. *See* Klug000319.

On May 9, 2016, Dr. Klug appealed the Ad Hoc Committee's decision to uphold the non-renewal decision. *See* Klug003391-3392.

On May 23, 2016, Dr. Shapiro verbally informed Dr. Klug that he was upholding the decision to non-renew. On May 24, 2016, she was given written confirmation of this decision from Dr. Paulette Wehner. *See* Klug000320.

## II. Opinion

a. **Rebecca Klug's performance demonstrated major deficiencies in several areas of core competency. The recommendations of the C3 and decisions of Dr. Mozaffari regarding remediation in 2015 and eventual non-renewal in 2016 were appropriate and supported by the available documentation.**

   i. Significant areas of deficiency include medical knowledge, patient care, and professionalism.

   ii. Dr. Klug's persistently poor performance on the ABSITE exam strongly predicts that she would not have qualified for certification by the American Board of Surgery (ABS). A 2014 manuscript authored by the ABS and published in the Journal of Surgical Education quantitatively demonstrates the strong predictive value of persistently poor ABSITE scores. (Jones, et al, 2014)

b. **Drs. Mozaffari, Denning, the C3, and appeals committees applied a fair, appropriate and compassionate process. With each adverse action against her, Dr. Klug was afforded the opportunity and resources to remedy but was unsuccessful.**

   i. During her initial PGY2 year (2014-2015), Dr. Klug was notified of deficiencies as assessed by the C3 according to the ACGME milestones. This notification was timely and fair.

8

    ii. Dr. Klug was provided with the opportunity to remedy. She agreed to specific criteria for restoring good status.

    iii. Dr. Klug was provided with a high level of support, a structured plan to improve her performance, and frequent reminders on remaining deficiencies and strategies to resolve them. Drs. Mozaffari and Denning provided direction and resources above and beyond the usual level of academic support to help Dr. Klug remediate.

    iv. This period of remediation was interrupted by a tragic event in Dr. Klug's family. Dr. Klug was compassionately encouraged to take leave to recover from this tragedy. However, of her own volition, she requested to return to work sooner than expected. She was encouraged by Dr. Mozaffari to take a longer leave, but Dr. Klug thought that an earlier return from leave would be beneficial to her. She did not request any special accommodations as part of her return and as such, her ongoing performance was judged based on usual criteria assuming a full, high level of function on her part.

    v. During her repeated PGY-2 (2015-2016), Dr. Klug failed to meet the criteria which she previously agreed would be necessary to restore good standing. She was therefore informed that her contract would not be renewed for the 2016-2017 academic year, functionally dismissing her from the program upon the completion of the 2015-2016 academic year. A diligent and fair process was followed by the residency program C3 and Drs. Mozaffari and Denning to arrive at this decision. The non-renewal decision was supported by substantial documentation of Dr. Klug's failure to remedy the previously-identified deficiencies and was appropriate.

    vi. Dr. Klug was provided the opportunity to appeal. The level-one appeal failed at the level of the C3 within the department. In that session, Dr. Klug acknowledged several of her documented deficiencies. The decision to deny the appeal and uphold the non-renewal was appropriate.

    vii. Dr. Klug then pursued an appeal with the ad-hoc review committee formed at the next-higher level by the institution's overseeing GME committee. This committee included two individuals chosen by Dr. Klug herself. This committee agreed that appropriate process was applied by the program. The decision to uphold the non-renewal decision was appropriate and reflected a diligent, thoughtful process.

9

      viii. The conclusive review by the dean, who declined to sustain her appeal, was appropriate, and affirmed that due process was afforded to Dr. Klug at all stages.

  **c. The residency program, the program director and the institution are not obligated to provide accommodations for undisclosed disabilities.**

      i. Dr. Klug disclosed her diagnosis of attention deficit disorder and the potential impact of that disability on her antecedent performance only after adverse action was taken against her in the form of non-renewal.

      ii. Following her husband's death, she returned to work of her own volition, but after she was notified of non-renewal she stated that she ought to have returned to work 6-12 months later, (See exhibit A, Letter dated April 6, 2016, Clinical Competency meeting First Level appeal). She attributes her deficient performance to stressful life events but did not seek any specific accommodations and declined offers of help from the program director.

  **d. Dr. Klug's concerns regarding unfair treatment from her co-residents was addressed by Dr. Mozaffari swiftly and definitively. Dr. Yung was clearly reprimanded and an appropriate solution was found to limit the contact between Drs. Klug and Yung.**

      i. This reflects the degree to which the residency program leadership was ensuring fair treatment and was actively working to prevent bullying and harassment in the workplace.

In summary, it is my opinion that Dr. Klug was appropriately dismissed from the Marshall University Surgical Residency program due to significant performance deficiencies that were refractory to structured remediation. These included but were not limited to significant deficiencies in:

- Patient care per ACGME milestones
- Medical Knowledge per ACGME milestones
- Professionalism per ACGME milestones
- Attendance of mandatory conferences
- Completion of assignments (reading and written)
- Documentation of sufficient surgical experience per ABS requirements
- Compliance with duty hour regulations per ACGME requirements
- Performance on the annual in training examination
- Timely completion of administrative tasks
- Timely completion of research assignments

- Maintaining scheduled meetings with assigned mentors

The application of a thoughtful and diligent process led to the adverse actions taken against her. The decision not to renew her contract was fair and appropriate.

### III.  Documents Reviewed

- *Susan Strauss, EXPERT OPINION REPORT*, March 5, 2020.
- Transcript, *Rebecca Klug Deposition*, November 20, 2019.
- Transcript, *Jillian McCagg Deposition*, January 13, 2020.
- Transcript, *Rebecca Wolfer Deposition*, January 22, 2020.
- Transcript, *Paulette Wehner Deposition*, January 22, 2020.
- Transcript, *Farid Mozaffari Deposition*, February 3, 2020.
- Transcript, *Debra Hart Deposition*, February 17, 2020.
- Transcript, *Katy Blair Statement Under Oath*, October 9, 2020.
- Transcript, *Rachel Young Statement Under Oath*, October 9, 2020.
- Transcript, *Svetlana Yudina Statement Under Oath*, October 20, 2020.
- Transcript, *Amy Bair Statement Under Oath*, November 8, 2020.
- Transcript, *Marco Yung Statement Under Oath*, November 19, 2020.
- Complaint, *Klug v. Marshall University, et al.,* 3:18-cv-00711, April 27, 2018.
- *Affidavit of Dr. Joseph Shapiro,* March 12, 2021.
- *Affidavit of Dr. Juan Sanabria*, March 15, 2021.
- *Affidavit of Dr. Kara Willenburg,* March 15, 2021.
- *Affidavit of Dr. David Dennington,* March 15, 2021.
- Documents produced in discovery.
- Documents I specifically reference herein.

I reserve the right to revise this opinion should the record be supplemented with additional information at a later date.

Respectfully submitted,

Peter Yoo, M.D.
March 25, 2021