**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**REBECCA KLUG,**

      **Plaintiff,**

v.                                                    **Civil Action No.: 3:18-CV-00711
Judge Robert C. Chambers**

**MARSHALL UNIVERSITY
BOARD OF GOVERNORS,
and FARID B. MOZAFFARI, an individual,**

      **Defendants.**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
FARID B. MOZAFFARI'S MOTION FOR SUMMARY JUDGMENT**

**I.**     **Introduction**

Pending before the Court is Dr. Farid B. Mozaffari's ("Defendant's") Motion for Summary Judgment. This Defendant submits this Memorandum of Law in support of said Motion.

**II.**     **Statement of Facts**

**A.**     **Plaintiff's Residency**

Plaintiff, Rebecca Klug began the general surgery residency program at Marshall University on or about July 1, 2013. *See* ECF 1, at ¶ 46. The general surgery residency program at Marshall University is five years and the contracts are renewed year to year. *See* ECF 1, at ¶ 29. The Plaintiff was a resident in the general surgery residency program until June 30, 2016. *See* ECF 1, at ¶ 129. Surgical residents are considered students and not employees of Marshall University. *See* Deposition of Paulette Wehner, pg 27, ECF 136-1.

During the residency program, the Plaintiff would take in-service training exams to allow Marshall University to assess her progress and competencies. *See* ECF 1, at ¶ 40. The Plaintiff did not score well on the in-service training exams. *See* ECF 1, at ¶ 74. During her first American Board of Surgery In Training Examination (ABSITE), the Plaintiff received a raw score of 185 which correlates to a score of 43% and was in the bottom 1 percentile compared her peers across the country. *See* ECF 136-2. The minimum ABSITE score required for promotion was 55% for a PGY-1.[1] *See* Deposition of Farid Mozaffari, pg. 20, ECF 136-3. However, at her final evaluation, she was promoted, and instructed to read, improve her ABSITE score. *See* ECF 136-4, [Evaluations 3-5].

During Plaintiff's "first" second year (July 2014-June 2015), there were multiple nursing complaints regarding failures of professionalism on the part of Dr. Klug. *See* Deposition of Farid Mozaffari, pg. 27-30, ECF 136-3. On August 15, 2014, Plaintiff was briefly placed on suspension for not keeping up with her charting requirements. *See* ECF 136-5, [Klug003693 through Klug003694]. On her midpoint evaluation on November 25, 2014, unsatisfactory evaluations and significant shortcomings in her completion of key mandatory administrative tasks were noted. *See* ECF 136-4, [Evaluations 141-144]. Specifically, the Plaintiff had only completed a fourth of the required SCORE assignments that she should have completed by November 5, 2014. *See* Deposition of Farid Mozaffari, Exhibit 2, ECF 136-3. Additionally, she had only logged 97 surgical cases and had not logged any since January 2014 or 10 months. *See* Deposition of Farid Mozaffari, Exhibit 2, ECF 136-3.

---

[1] The minimum ABSITE score was not the only criteria for promotion. Moreover, if a resident's only deficiency was their ABSITE score, they were still promoted per ACGME guidelines. *See* Deposition of Farid Mozaffari, pg. 23. Essentially, poor ABSITE scores triggered remediation. *See* Deposition of Farid Mozaffari, pg. 24.

2

On March 3, 2015, Dr. Klug received a 288 on her ABSITE, which correlates to a score of 52% and in the bottom 1 percentile of trainees at her level across the country. *See* ECF 136-2. The minimum ABSITE score required for promotion was 60% for a PGY-2. *See* Deposition of Farid Mozaffari, pg. 20, ECF 136-3; Deposition of Donna Webb, pg. 91-92, ECF 136-7.

On March 12, 2015, Dr. Klug was given a warning letter that she was to repeat the PGY 2 level. *See* Deposition of Farid Mozaffari, Exhibit 4; Klug000297; ECF 136-3. Therein, it was noted "[b]ecause there was no improvement from last year's ABSITE, which was well below national average and what is expected of our residents, the lack of keeping up with your scheduled reading assignments and didactics, not turning in your research project as required, the [Clinical Competency] Committee decided that you will not be promoted to the PGY 3 level, but remain at the PGY 2 level." *See* Deposition of Farid Mozaffari, Exhibit 4; Klug000297; ECF 136-3. A plan of action was drafted for Dr. Klug to meet with a mentor weekly, enroll in the Marshall Help Program to identify possible test taking problems, and be given weekly exams. *See* Deposition of Farid Mozaffari, Exhibit 4; Klug000297; ECF 136-3. Dr. Klug challenged this decision. *See* Klug000298; ECF 136-7.

On April 2, 2015, Dr. Klug was given an ABSITE remediation plan. *See* Klug000299; ECF 136-8. In her remediation plan, Dr. Klug was to complete a two-paragraph summary on all areas missed on ABSITE. Dr. Klug had approximately 81 topics to work on. *See* Klug000299; ECF 136-8. She was required to turn in at least half of the topics by June 30, 2015 and the other half by September 30, 2015. *See* Klug000299; ECF 136-8. Additionally, Dr. Klug was required to attend and participate in at least 90% of Wednesday SCORE lectures/discussions, as well as score 70% or above on Wednesday exams. *See* Klug000299; ECF 136-8.

On April 9, 2015, the Ad Hoc Appeal Committee upheld Dr. Klug's appeal of her non-promotion, however, they noted "granting your request for appeal does not guarantee subsequent advancement nor remove any responsibility you may have to successfully remediate any deficiencies within the required time frame according to a written plan." *See* Klug000301 – 302; ECF 136-9.

On April 20, 2015, Dr. Klug was given an Educational Enhancement Program for Poor Academic Performance. Dr. Klug was required to do the following:

Required Work Effort:
1. 100% completion of the weekly SCORE curriculum (catch up from last year to present)
2. 100% attendance at all conferences (except scheduled vacation)
3. Minimum average score of 70% on weekly exams
4. Strict adherence to the 80 hour work week and call restrictions/regulation without any exceptions (Dr. Klug herself is responsible for keeping track of her duty hours and reporting of her duty hours within 24 hours of completing her daily work. Any violation of the 80-hour work week has to be immediately reported to the program director and to the administrative chief.)
5. Timely completion of all administrative duties, charts, and documentations.
6. Maintaining updated ACGME case logs
7. Weekly meetings with Dr. Amanda Arrington, to be scheduled and adhered to by Dr. Klug. Dr. Arrington will give Dr. Klug assigned reading and work to be done and will monitor her progress and participation and report back to the Program Director on a weekly basis
8. All conditions listed above are in addition to the criteria for promotion from PGY-2 to PGY-3 that is already stated in the resident hand book and required by the American Board of Surgery as well as the requirements of the ABSITE policy.
    a. Write and submit an abstract on research topic chosen as a PGY 1 to a state or national meeting for poster or oral presentation
    b. Completion of ASTS Transplant Curriculum on SCORE
    c. Exposure or participation in 50% of the SCORE Curriculum Procedures (see attachment for procedures)
    d. ABS Requirement – resident will be required to have performed 250 cases by the conclusion of the PGY 2 year
    e. PGY 2 must prove competency by acquiring the requisite number of procedures under direct supervision by a PGY 4 or 5 resident or an attending physician

4

      f.     ABSITE Policy – Complete 2 paragraph summary, single spaced, on all areas missed on ABSITE (Do not include any topic that includes APPLIED SCIENCE or is duplicated). You have approximately 81 topics that you need to work on. At least half of the topics should be turned in the Program Coordinator by June 20 and the other half by September 30, 2015. This is to be your summary of a topic, not cut and pasted from another source.

      g.     Dr. Klug will continue to be excused from work duties for any scheduled doctor's appointments.

All of these requirements must be completed by June 15, 2015. In late June, Dr. Klug will be given an exam similar to ABSITE and must obtain a minimum of 65% correct answers. Failure to comply with any of the conditions listed above will result in non-promotion to PGY-3 and repeating PGY-2 year. Signed by both Dr. Mozaffari and Dr. Klug on 4/20/2015.

*See* Klug000304 – 305; ECF 136-10. Dr. Klug did not complete her requirements under this plan. *See* Deposition of Donna Webb, pg. 103; ECF 136-6.

On or about May 12, 2015, her husband committed suicide, and her remediation requirements were put on hold. *See* Deposition of Plaintiff, pg 43; ECF 136-11. She took a brief leave of absence to grieve. *See* Deposition of Plaintiff, pg 41; ECF 136-11. On or about May 26, 2015, she contacted Dr. Mozaffari by email to inform him that she wanted to return to work on June 1, 2015. She thanked him for his support and stated that return to work would "be a welcome distraction." However, Plaintiff admits that, after she came back, she worked slower, didn't work as many hours, and would get frustrated easier. *See* Deposition of Plaintiff, pg 41-42; ECF 136-11.

On or about June 23, 2015, Dr. Klug had her final "first" PGY-2 level evaluations. *See* Deposition of Farid Mozaffari, Exhibit 3; ECF 136-3. Therein, it was noted she had completed 67% of her SCORE assignments and weekly exams. *See* Deposition of Farid Mozaffari, Exhibit 3; ECF 136-3. She was required to complete 100%. *See* Deposition of Farid Mozaffari, Exhibit 3; ECF 136-3. Moreover, she was specifically required to compete the ASTS Transplant Module but failed to do so. *See* Deposition of Farid Mozaffari, Exhibit 3; ECF 136-3. Further, Dr. Klug had

5

"not done anything on research." *See* Deposition of Farid Mozaffari, Exhibit 3; ECF 136-3. She was required to write an abstract for a topic of her choosing. *See* Deposition of Farid Mozaffari, Exhibit 3; ECF 136-3. Additionally, Dr. Klug had not logged any cases since March 30, 2015. *See* Deposition of Farid Mozaffari, Exhibit 3; ECF 136-3. It was noted she had only 122 qualifying cases for the ABS 250 minimum requirement. *See* Deposition of Farid Mozaffari, Exhibit 3; ECF 136-3. Additionally, Dr. Klug completed her Endoscopy rotation with only 29 cases, short 56 cases of the required number, 85, for Endoscopy. *See* Deposition of Farid Mozaffari, Exhibit 3; ECF 136-3. Also, Dr. Klug was 2.5 weeks behind in logging her duty hours and logged 3 separate duty hour violations without the required explanation. *See* Deposition of Farid Mozaffari, Exhibit 3; ECF 136-3. Specifically, Dr. Klug was informed of her weaknesses:

> "when questioned about certain therapies she doesn't seem to have the knowledge necessary to argue her case; she must read and her fund of knowledge must improve; need to increase depth of knowledge base; she knows enough to function day to day but needs much more for true critical problem solving. She needs to be more assertive in the OR…has trouble prioritizing – reported to have worked 48-hours straight at the VA and this has never been required (the dates were when the Chief was in town); needs more time in the OR; work on medical knowledge and relationship with attendings; needs to increase level of sense of urgency at time especially when pertains to cardiac arrhythmias which are common; needs to continue reading as instincts will only take you so far… ***extremely concerned with Dr. Klug's fund of knowledge – either she is not reading or she is not retaining what she has read***."

*See* Deposition of Farid Mozaffari, Exhibit 3; ECF 136-3. In her evaluation it was noted she was not ready for PGY3. *See* Deposition of Farid Mozaffari, Exhibit 3; ECF 136-3.

On July 10, 2015, Dr. Mozaffari again authored a letter to Dr. Klug. *See* Klug000308; ECF 136-12. Therein, he noted she was approved for paid leave until August 1, 2015. *See* Klug000308; ECF 136-12. Additionally, he added some requirements for Dr. Klug to complete prior to her return to work on August 1, 2015:

6

- Please bring your ACGME case logs up to date and keep them up to date at all times.
- Give me an outline of a personal study plan for 2015-2016.
- Establish an area or topic of research project and complete the CITI training and request IRB if applicable.
- Complete the ABS Flexible Endoscopy Curriculum – Level One (Curriculum attached)
- Complete the Intro to the Practice of Medicine Curriculum modules 2,4,8,9,10,21,22,24 and 25 (information attached).

*See* Klug000308; ECF 136-12. These requirements were in addition to her previous assignments. *See* Klug000308; ECF 136-12. Additionally, Dr. Mozaffari reminded her deadlines for the completion of her previous assignments will be moved to November 1, 2015 due to her leave of absence. *See* Klug000308; ECF 136-12.

On January 4, 2016, Dr. Klug received her midpoint evaluation. *See* ECF 136-13. Therein, it was noted she only had an 86% attendance at weekly conferences, rather than her 100% requirement. *See* ECF 136-13. Additionally, Dr. Klug had still not completed her IRB project or abstract for her research. *See* ECF 136-13. These items were due November 1, 2015. *See* ECF 136-13. It was also noted that she had not logged all of her cases to that point. *See* ECF 136-13. Additionally, the ABSITE was discussed and she was informed she needed to achieve a 60% on the ABSITE. *See* ECF 136-13. Moreover, she was frequently delinquent on medical records lists and had multiple duty hour violations. *See* ECF 136-13. She was informed not to have any further duty hour violations. *See* ECF 136-13. Dr. Mozaffari implored with her to improve her communication skills and not withdraw from others. *See* ECF 136-13. Additionally, she was not meeting weekly with her mentor Dr. Arrington as required. *See* ECF 136-13. Plaintiff informed Dr. Mozaffari that she did not trust him. *See* ECF 136-13. Thus, Dr. Mozaffari informed her that he would abstain from making decisions on her education and will let the Clinical Competency Committee "C3" make those decisions without his input. *See* ECF 136-13.

7

February 19, 2016, Donna Webb met with Dr. Klug, where the Dr. Yung situation was discussed and she recognized she had "not been following the agreement she signed, but stated she had a lot going on." *See* Klug000321; ECF 136-14.

On or about February 25, 2016, Donna Webb met with Dr. Klug, where Dr. Klug recognized she will be held accountable for not starting sooner with having a study plan and working on outlines. *See* Klug000321; ECF 136-14. Dr. Klug also met with Human Resources regarding her complaint against Dr. Yung and was happy with the outcome of separating her and Dr. Yung. "[T]his is all she expected or wanted." *See* Klug000321; ECF 136-14.

On March 2, 2016, Dr. Klug received a 305 on her ABSITE, which is correlates to a score of 54% and in the bottom 1 percentile compared to her peers. *See* ECF 136-2. The minimum ABISTE score required for promotion was 60% for a PGY-2. *See* Deposition of Farid Mozaffari, pg. 20; ECF 136-3.

On March 28, 2018, Dr. Klug was notified that her contract for her residency training will not be renewed for the academic year July 1, 2016 through June 30, 2017. *See* Klug000317; ECF 136-15. The C3 committee believed that Dr. Klug would not be able to pass her boards and that she would not be able to ***demonstrate sufficient professional ability to practice surgery competently and independently.*** *See* Klug000317; ECF 136-15.

On April 1, 2016, Dr. Klug appealed the non-renewal decision, and, rather than submit her appeal directly to the Ad Hoc Committee pursuant to GME guidelines, she requested that she be given an extra level of appeal to the C3 committee prior to presenting her case to the Ad Hoc Committee. *See* Klug 003349-003351; ECF 136-16. Dr. Klug's request to present to the C3 committee first, giving her an extra level of appeal, was granted. *See* Klug 003346; ECF 136-16.

8

On April 6, 2016, Dr. Klug's appeal to the C3 committee was held. *See* Deposition of Donna Webb, pg. 105-107, Exhibit 11; ECF 136-6. The C3 committee consisted of Dr. Denning, Dr. Thompson, Dr. Arrington, Dr. Bown, Dr. Harrison, Dr. Robinson, Dr. Walker, and Kim Mann (Trauma Nurse Practitioner). *See* Deposition of Donna Webb, pg. 105-107, Exhibit 11; ECF 136-6. Dr. Denning chaired the committee and Dr. Klug presented her case. *See* Deposition of Donna Webb, pg. 105-107, Exhibit 11; ECF 136-6. Therein, Dr. Klug "accepted that she had deficiencies," admitted "she had a lack of communication with Dr. Mozaffari," admitted she "did not adhere to Dr. Arrington's study plan or meetings with her," and regretted not enrolling in the HELP program to improve her test taking abilities. *See* Deposition of Donna Webb, pg. 105-107, Exhibit 11; ECF 136-6.

In the C3 committee discussions, Dr. Arrington noted that Dr. Klug did not fulfill her study plan and was using her problems as an excuse. *See* Deposition of Donna Webb, pg. 99, Exhibit 11, ECF 136-6. She believed that they should stick to the original decision as they can't keep letting someone repeat their PGY level. *See* Deposition of Donna Webb, pg. 99, Exhibit 11, ECF 136-6. Dr. Bown noted that she has the same issues and has shown no improvement, and that she was aware last July that her status was in jeopardy. *See* Deposition of Donna Webb, pg. 100, Exhibit 11, ECF 136-6. Dr. Thompson noted that she doesn't know patients as well as the interns do. *See* Deposition of Donna Webb Exhibit 11, ECF 136-6. Dr. Robinson noted that she had poor H&P (history and physical, which is essentially poor note taking and not giving sufficient information on patient), old labs, she was disorganized, and that a patient could have died. *See* Deposition of Donna Webb Exhibit 11, ECF 136-6. Dr. Denning noted that she did not meet regularly with her mentor, has not improved on her problems, deteriorated rather than progressed, was disorganized, could not handle stress, had significant problems with time management, multiple problems with

overages on her work hours, deficient in assigned tasks from the program, and many doubted she could be a surgeon. *See* Deposition of Donna Webb Exhibit 11, ECF 136-6. Dr. Denning was never made aware of any complaints of sexual discrimination. *See* Affidavit of David Denning; ECF 136-17. Dr. Denning believed Dr. Klug lacked the fundamental knowledge to become a surgeon and her contract was not-renewed because she failed to meet both clinical and academic benchmarks. *See* Affidavit of David Denning; ECF 136-17.

On April 8, 2016, the C3 committee determined the non-renewal of her contract should stand. *See* Deposition of Donna Webb, pg. 102; ECF 136-6. It was a unanimous decision. *See* Deposition of Donna Webb, pg. 102; ECF 136-6. On April 15, 2016, Dr. Klug appealed the decision of the C3 committee to the Ad Hoc Committee. *See* Klug003377; ECF 136-18.

On April 27, 2016, the Ad Hoc Appeals Committee heard the grievance filed by Dr. Klug appealing the decision of the Surgery Department regarding non-renewal of her contract for the 2016-2017 academic year. *See* Klug000319; ECF 136-18. The Ad Hoc Committee consisted of Dr. Kevin Conaway, Dr. Maria Trio Tirona, Dr. Ellen Thompson, Dr. Kara Willenburg, and Dr. Matthew Curry. *See* Klug000319; ECF 136-18. Dr. Conaway was the chair of the committee. *See* Klug003386; ECF 136-18. Drs. Tirona and Thompson were chosen by the GME office. *See* Klug003386; ECF 136-18. Drs. Willenburg and Curry were chosen by Dr. Klug. *See* Klug003386; ECF 136-18. Dr. Klug, Dr. Mozaffari and witnesses called by both parties presented statements. *See* Klug003386; ECF 136-18. After deliberation, the Committee decided:

1. The resident's performance was judged fairly using common criteria established by the Program;
2. The resident was made aware of specific deficiencies to be corrected;
3. The resident was instructed to correct the deficiencies;
4. The resident was aware that the actions of the Program Director constituted remediation;

>    5. The resident's performance was re-evaluated according to established criteria common to the Program;
>    6. There is no evidence that would indicate the original action of non-renewal should be overturned.

The appeal was denied and decision to non-renew upheld. *See* Klug000319; ECF 136-18. The Ad Hoc committee found no evidence of discrimination, that Dr. Klug was given due process, and that she failed to remediate. *See* Affidavit of Kara Willenburg; ECF 136-19.

On May 9, 2016, Dr. Klug appealed the Ad Hoc Committee's decision to uphold the non-renewal decision. *See* Klug003391-3392; ECF 136-20. On May 23, 2016, Dr. Shapiro verbally informed Dr. Klug that he was upholding the decision to non-renew. *See* Klug000320; ECF 136-21. Dr. Shapiro felt that she did not have the basic knowledge required for surgery, and that would be a danger to the public if she were a practicing independent surgeon. *See* Affidavit of Dr. Joseph Shapiro; ECF 136-22. On May 24, 2016, she was given written confirmation of this decision from Dr. Paulette Wehner. *See* Klug000320; ECF 136-21.

Marshall University expert, Dr. Peter Yoo, general surgery program coordinator for Yale University, has opined that Dr. Klug had major deficiencies in several areas, that the appeal process was fair and appropriate, and that she was appropriately dismissed from the program. *See* ECF 136-23.

At no time during the Plaintiff's residency did she ever make a request for a reasonable accommodation for her alleged disability of anxiety and depression. *See* Deposition of Plaintiff, pg 27, ECF 136-11. Moreover, she believed that it never became a problem that needed an accommodation. *See* Deposition of Plaintiff, pg 27, ECF 136-11.

### B. Plaintiff's Allegations

Defendant Mozaffari hereby adopts and incorporates by reference as if fully restated herein the Statement of Facts in the Memorandum of Law in Support of Marshall University Board of Governors' Motion for Summary Judgment.

Defendant Mozaffari would like to specifically point out that the first complaint against him was made on January 4, 2016. *See* Deposition of Susan Strauss, pg 152, ECF 138-XX. As a result, he immediately removed himself from any decision making with respect to the Plaintiff's education. *See* Deposition of Susan Strauss, pg 152-153, ECF 138-XX.

### C. Claims against this Defendant

By Order of this Court, the remaining claims against this Defendant are (1) sex discrimiantion under the West Virginia Human Rights Act ("WVHRA"), (2) disability discrimination under the WVHRA, and (3) Aiding and Abetting.

### III. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that either complete or partial summary judgment may be granted when it appears that there is "no genuine issue as to any material fact." A genuine issue exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson* at 247-48 (emphasis original).

"In other words, summary judgments should be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the

application of the law." *Miller v. Fed. Deposit Ins. Corp.*, 906 F.2d 972, 973-74 (4th Cir. 1990) (citing *Charbonnages De France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950)). "On summary judgment, any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Miller*, 906 F.2d at 974 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). "However, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Miller*, 906 F.2d at 974 (citing *Matsushita Elec. Indus. Co., Ltd*, 475 U.S. at 587; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

## IV. <u>Argument</u>

### A. Dr. Mozaffari is entitled to Immunity.

A public executive official who is acting within the scope of his authority is entitled to qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known. There is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive. *State v. Chase Securities, Inc*., 188 W.Va. 356, 424 S.E.2d 591 (1992). Individual immunity was expanded in *Clark v. Dunn* to include what is now referred to as the "discretionary function" immunity, which held that:

> If a public officer is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority, and jurisdiction, he is not liable for negligence or other error in the making of that decision, at the suit of a private individual claiming to have been damaged thereby.

Syl. Pt. 4, 465 S.E.2d 374.

To preclude the immunity defense, the Plaintiff must allege and prove that this Defendant did act fraudulently, maliciously, or oppressively. The Plaintiff has no facts to support this accusation. The record shows that Dr. Mozaffari went out of his way to attempt to help the Plaintiff. When Plaintiff informed Defendant Mozaffari that she did not trust him, he immediately removed himself from the decision-making process. His acts in no way could be considered fraudulent, malicious, or otherwise oppressive. As a result, Defendant Mozaffari is entitled to immunity from the Plaintiff's claims.

**B.      Plaintiff's claim of Sex Discrimination under the WVHRA fails as a matter of law.**

A cause of action under the WVHRA must be predicated upon an unlawful motivation, not simply an unlawful injury. *Arbaugh v. Bd. of Educ., Cty. of Pendleton*, 329 F. Supp. 2d 762, 772 (N.D.W. Va. 2004).

To establish a claim for sexual harassment under the West Virginia Human Rights Act, W. Va. Code § 5–11–1, et seq., based upon a hostile or abusive work environment, a plaintiff-employee must prove that (1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) it was imputable on some factual basis to the employer." Syllabus Point 5, *Hanlon v. Chambers*, 195 W. Va. 99, 464 S.E.2d 741 (1995).

Under West Virginia Code section 5–11–9(6)(A), it is an unlawful discriminatory practice for any agent or employee of any place of public accommodations to: "Refuse, withhold from or deny to any individual because of his or her race, religion, color, national origin, ancestry, sex, age, blindness or disability, either directly or indirectly, any of the accommodations, advantages, facilities, privileges or services of the place of public accommodations."

14

"An employee may state a claim for hostile environment sexual harassment if unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature have the purpose or effect of unreasonably interfering with an individual's work performance or creates an intimidating, hostile, or offensive working environment." Syllabus point 7, *Hanlon v. Chambers*, 195 W.Va. 99, 464 S.E.2d 741 (1995).

There is no evidence that Dr. Mozaffari acted discriminatory toward the Plaintiff in any way. Nothing in any of the Plaintiff's complaints can be categorized as unwelcome conduct based on her sex. The Plaintiff herself admits this, as does her expert witness. When completing the Title IX complaint form, the Plaintiff marked "other" rather than "sexual discrimination" when describing her complaints. When each and every complaint that Dr. Klug ever made to Marshall University was discussed with Dr. Strauss, she acknowledged that the complaints were workplace disputes that were not sexually based on their face.

Moreover, the Plaintiff has no evidence that her alleged harassment was objectively severe or pervasive with respect to this Defendant. Dr. Klug made a specific complaint against Dr. Mozaffari, informing him that she did not trust him. While this is not gender related, Dr. Mozaffari removed himself from the decision-making process in order to appease her and eliminate any inference of impermissible behavior. As Plaintiff's own expert admits, this was appropriate. Moreover, his decision alleviated Dr. Klug's complaint.

When Dr. Mozaffari was made aware of any complaints of the Plaintiff, he attempted to resolve them. Because the Plaintiff cannot provide any evidence that she was subjected to unwelcome conduct that was objectively severe or pervasive, her sexual discrimination claim under the WVHRA fails as a matter of law.

**C.  Plaintiff does not have a valid claim for disability discrimination under the WVHRA.**

In Syllabus Point 2 of *Skaggs v. Elk Run Coal Co*., 198 W.Va. 51, 479 S.E.2d 561 (1996), the West Virginia Supreme Court of Appeals stated:

> To state a claim for breach of the duty of reasonable accommodation under the West Virginia Human Rights Act, W. Va. Code, 5–11–9 (1992), a plaintiff must allege the following elements: (1) The plaintiff is a qualified person with a disability; (2) the employer was *aware* of the plaintiff's disability; (3) the plaintiff *required an accommodation* in order to perform the essential functions of a job; (4) a *reasonable accommodation existed* that met the plaintiff's needs; (5) the employer *knew or should have known* of the plaintiff's need and of the accommodation; and (6) the employer failed to provide the accommodation.

(Emphasis added.)

In order to prove her disability under the WVHRA, the Plaintiff must show that she has "[a] mental or physical impairment which substantially limits one or more of such person's major life activities. The term 'major life activities' includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *See* W. Va. Code § 5–11–3(m)(1).

While Plaintiff claims she suffered from anxiety and depression, she has provided no evidence that she in fact has a disability such that one or more of her major life activities is substantially limited. Quite the contrary, she was able to be admitted into a general surgery residency program.

Moreover, she has not provided any evidence that Dr. Mozaffari was aware of her disability, that she needed an accommodation, or that a reasonable accommodation existed. The Plaintiff herself testified that she did not feel that her anxiety or depression affected her job. Further, she testified that she did not tell anyone, or Dr. Mozaffari, that it affected her job. As a result, her claim for disability discrimination fails as a matter of law.

**D.     Plaintiff's Aiding and Abetting claim fails as a matter of law.**

West Virginia has not defined the terms "aid" and "abet" in its Human Rights Act. In *Larry v. Marion County Coal Company*, the District Court of the Northern District of West Virginia predicted that the Supreme Court of West Virginia would follow other states' approaches to interpreting the term within their own state Human Rights Acts. 2018 WL 648371 at *10–11. To define aid or abet, courts have applied the Restatement (Second) of Torts § 876(b) which holds that "for harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.". *Id.* at *10.

Applied to the aiding and abetting claim, this would mean that for a person to be found liable for aiding and abetting an unlawful discriminatory practice, they must have known an action was discriminatory and given "substantial assistance or encouragement" to the employer to accomplish that discrimination. *Id.* at *11. A failure to question or review the decision-making process behind the discriminatory action would not be sufficient to find a person liable for aiding or abetting. *Id.*

In this case, the Complaint itself fails to state certain acts of aiding and abetting on behalf of the Defendants. Specifically, the Complaint fails to identify the primary actor and the individual aiding or abetting that primary actor. The only allegation the Plaintiff made with respect to the aiding and abetting claim is that "[t]he above-described acts of Defendants constitute aiding and abetting unlawful discriminatory practices." *See* ECF 1, at ¶ 214.

There has been no evidence produced or discovered to date that would suggest that Dr. Mozaffari was aware that discriminatory actions were being taken and provided substantial assistance or encouragement for the same. In fact, the Plaintiff herself admitted that the actions

17

she complains of were not discriminatory based on her sex as she checked the box beside "no" with respect to sexual harassment. Whenever she made a complaint, Dr. Mozaffari stepped in and attempted to resolve that complaint. That is the complete opposite of aiding and abetting. Therefore, the Plaintiff's aiding and abetting claim must be dismissed as a matter of law.

### V.     Conclusion

**WHEREFORE**, for the reasons stated above, this Defendant respectfully moves the Court to enter an Order dismissing all claims asserted against him with prejudice and for any and all other such relief as the Court deems appropriate and just under the circumstances.

**FARID B. MOZAFFARI,**

**By counsel**

s/Eric D. Salyers
Perry W. Oxley (WVSB #7211)
David E. Rich (WVSB #9141)
Eric D. Salyers (WVSB #13042)
Oxley Rich Sammons, PLLC
517 9th Street, Suite 1000
Huntington WV 25701
304-522-1138
304-522-9528 (fax)
poxley@oxleylawwv.com
drich@oxleylawwv.com
esalyers@oxleylawwv.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**REBECCA KLUG,**

  **Plaintiff,**

v.            Civil Action No.: 3:18-CV-00711
                Judge Robert C. Chambers

**MARSHALL UNIVERSITY
BOARD OF GOVERNORS,
and FARID B. MOZAFFARI, an individual,**

  **Defendants.**

## CERTIFICATE OF SERVICE

  The undersigned counsel for Defendant, Farid B. Mozaffari, served the foregoing "***Memorandum of Law in Support of Defendant Farid B. Mozaffari's Motion for Summary Judgment***" by electronically filing a true copy of the same with the Clerk of the Court using the CM/ECF system on this **9th** day of **April**, **2021**:

      Kristina Thomas Whiteaker
      David L. Grubb
      The Grubb Law Group
      1114 Kanawha Boulevard, East
      Charleston, WV 25301
      *Counsel for Plaintiff, Rebecca Klug*

        s/Eric D. Salyers
        Perry W. Oxley (WVSB #7211)
        David E. Rich (WVSB #9141)
        Eric D. Salyers (WVSB # 13042)