**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**REBECCA KLUG,**

    **Plaintiff,**

v.                                                        **Civil Action No.: 3:18-CV-00711**
                                                                             **Judge Robert C. Chambers**

**MARSHALL UNIVERSITY
BOARD OF GOVERNORS,
and FARID B. MOZAFFARI, an individual,**

    **Defendants.**

**DEFENDANT FARID B. MOZAFFARI'S REPLY TO
<u>PLAINTIFF'S RESPONSE TO HIS MOTION FOR SUMMARY JUDGMENT</u>**

**I.    <u>Introduction</u>**

Pending before the Court is Dr. Farid B. Mozaffari's ("Defendant's") Motion for Summary Judgment and the Plaintiff's Response to the same. This Defendant submits this Reply to Plaintiff's Response.

The Plaintiff's claims against Dr. Mozaffari are based on his own actions and his actions as a supervisor. As Plaintiff concedes, to establish supervisor liability, she must show that Dr. Mozaffari had actual notice of the wrongdoing, that his response was so inadequate that it was deliberately indifferent, and that his inaction caused her injury. *See* ECF 144, pg. 19; *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994); *Rex v. W. Virginia Sch. of Osteopathic Med.*, 119 F. Supp. 3d 542, 552 (S.D.W. Va. 2015). Thus, Dr. Mozaffari can only be liable for his actions or actions of his subordinates to which he was made aware.

## II.     Statement of Facts

### A.     Actions of Dr. Mozaffari

Dr. Klug alleges that "Defendant Mozaffari fostered a hard-core, 'macho' working environment in which he punished residents in meetings by making them do push-ups in front of everyone." *See* ECF 144, pg. 5. However, she does not allege Dr. Mozaffari ever made her do push-ups. Moreover, as Dr. Mozaffari explained in his deposition, he did this if they would fall asleep during meetings, as a way to wake them up. *See* Deposition of Dr. Mozaffari, pgs. 141, 159; ECF 149-1. Nonetheless, this is not evidence of gender discrimination or discrimination in anyway against Dr. Klug.

In or around March 2015, Dr. Klug alleges that Dr. Mozaffari told her she was repeating her second year due to low ABSITE scores and performance issues. *See* ECF 144, pg. 8. She does not allege any discrimination associated with this decision, but rather, admits Dr. Mozaffari informed her of non-discriminatory reasons. *Id*. However, she takes issue with the lack of notice of non-promotion. *Id*. However, this issue was cured after her appeal of the decision was granted. *Id*. Contrary to her assertion that she was not made aware of any issues with respect to her performance, there were multiple instances where she was informed of her shortcomings. *See* ECF 137, pg. 2 (there were multiple nursing complaints, she was placed on suspension, she had unsatisfactory evaluations and failed to complete key administrative tasks, failed to complete SCORE assignments, and failed to log her cases in a timely fashion). Certainly, she was aware of her deficient ABSITE score.

Sometime after her return to the program on June 2, 2015, she alleges that Dr. Mozaffari would not allow her to switch rotations and that she would have to sink or swim. *See* ECF 144, pg. 9. Regardless of whether this occurred, it is not a material fact because it is not an allegation that

it was done with any discriminatory intent. However, Dr. Mozaffari said he never told her she was going to have to sink or swim. *See* Deposition of Mozaffari, pg. 66; ECF 149-1. Moreover, Dr. Mozaffari testified that he did not refuse to let her switch rotations, instead, he actually investigated the issue and found that St. Mary's was the best place for her because Cabell had a higher workload and she could not switch with someone at the VA. *See* Deposition of Mozaffari, pg. 76-77; ECF 149-1.

Dr. Klug alleges that, with respect to her husband's death, Dr. Mozaffari told her she's going to have to get over it because worse things will happen to her. *See* ECF 144, pg. 10. Regardless of whether this occurred, it is not a material fact because it is not an allegation that it was done with any discriminatory intent. Nonetheless, Dr. Mozaffari testified that he said "[e]very time I have told myself it can't get any worse than this, it did," and not that "[w]orse things will happen to you." *See* Deposition of Mozaffari, pg. 66; ECF 149-1. Dr. Mozaffari testified that he was trying to help her and encourage her to be strong. *Id*.

Dr. Klug takes issue with the final evaluation for the 2014-2015 school year. *See* ECF 144, pg. 11. She believes Dr. Mozaffari relied on false information provided by Dr. Yung. *Id*. However, Dr. Mozaffari provided her with a laundry list of issues of why she was not ready to be promoted. *See* ECF 137, pg. 5-6 (notably that he was extremely concerned with her lack of knowledge). He did not mention Dr. Yung in the written evaluation. *See* ECF 136-3. Moreover, **agreed** to repeat her PGY2 year. *See* ECF 144, pg. 11 (emphasis added).

On January 4, 2016, in her midpoint evaluation, the Plaintiff alleges that she was told to complete two tasks and she completed them. *See* ECF 144, pg. 13. Those were far from the only two deficiencies she needed to correct. *See* ECF 137, pg. 7.

3

At this January 4, 2016 evaluation Dr. Mozaffari informed the Plaintiff that he would abstain from making decisions on her education and will let the Clinical Competency Committee "C3" make those decisions without his input. *See* ECF 136-13; Deposition of Mozaffari, pg. 87, 137. Thus, he clearly cannot be liable for anything that after January 4, 2016. Plaintiff's own expert admits this was a fair way to deal with this issue. *See* Deposition of Susan Strauss, pg 153; ECF 138-1.

Contrary to Plaintiff's assertion, Dr. Mozaffari did not have the final decision, or any decision. Generally speaking, the program director makes the initial decision, which, if necessary, is appealed to the Ad Hoc Committee and then to Dean Shapiro. *See* Deposition of Mozaffari, pg. 148-149; ECF 149-1. However, in this instance, Dr. Mozaffari removed himself from the process and let the C3 committee make their own decision without his input. *See* ECF 136-13; Deposition of Mozaffari, pg. 87, 137. Then, rather than submit her appeal directly to the Ad Hoc Committee pursuant to GME guidelines, the Plaintiff requested that she be given an extra level of appeal to the C3 committee prior to presenting her case to the Ad Hoc Committee. *See* Klug 003349-003351; ECF 136-16. Dr. Klug's request to present to the C3 committee first, giving her an extra level of appeal, was granted. *See* Klug 003346; ECF 136-16. On April 8, 2016, the C3 committee determined the non-renewal of her contract should stand. *See* Deposition of Donna Webb, pg. 102; ECF 136-6.

Then, at the second level of appeal, the Ad Hoc committee found no evidence of discrimination, that Dr. Klug was given due process, and that she failed to remediate. *See* Affidavit of Kara Willenburg; ECF 136-19. The appeal was denied and decision to non-renew upheld. *See* Klug000319; ECF 136-18. The third level of appeal went to Dr. Shapiro, who upheld the non-renewal decision, believing that the Plaintiff did not have the basic knowledge required for surgery,

and that would be a danger to the public if she were a practicing independent surgeon. *See* Affidavit of Dr. Joseph Shapiro; ECF 136-22.

The Plaintiff takes issue with an alleged chart or timeline that she contends was inaccurate. However, there is zero evidence in the record that anyone from the C3 committee or the Ad Hoc Committee ever saw this document. Quite the contrary, Donna Webb testified that the chart was created solely for Dr. Mozaffari, and that no one from the C3 committee ever saw it. *See* Deposition of Donna Webb, pg. 115; ECF 149-2.

**B.      Events Plaintiff asserts Dr. Mozaffari had actual notice of subordinates.**

Dr. Klug alleges that in or around July 2014, "Dr. Yung, who was a fourth year resident, took Dr. Klug in the call room and yelled at her for an hour about being 'disrespectful' about a routine scheduling matter." *See* ECF 144, pg. 5. Dr. Yung admits he spoke with Dr. Klug about this incident but denied that he yelled at her or berated her. *See* Statement Under Oath, Dr. Yung, pg. 14-16; ECF 149-3. Nonetheless, the Plaintiff admits she did not make a complaint about this incident, nor does she claim Dr. Mozaffari was made aware. *See* ECF 144, pg. 5.

Her next complaint is that male residents would watch offensive and sexually explicit videos. *See* ECF 144, pg. 6. Dr. Mozaffari addressed this concern and informed the residents to no longer watch videos in the call room. *See* Deposition of Susan Strauss, pg 182-184, 189; ECF 138-1; ECF 144, pg. 6, 28. Moreover, by Plaintiff's own admission, and her experts, the videos stopped and she was no longer on rotation with Dr. Yung. *See* Deposition of Plaintiff, pg. 114-115; *See* Deposition of Susan Strauss, pg 182-184, 189; ECF 138-1 ("Q. And, as far as I can tell, there – there was no further complaints concerning anything like that in the rest of the record after the made that statement to the people. Are you aware of any? A. I'm – I'm not aware of any, no.").

5

On June 20, 2015, Dr. Klug describes issues she is having with Dr. Marco Yung. *See* Deposition of Susan Strauss, pg 128-138; ECF 138-1. As Plaintiff's expert agrees, these issues were not instances of discrimination. *See* Deposition of Susan Strauss, pg 128-138; ECF 138-1. Nonetheless, Dr. Mozaffari testified that he spoke with Dr. Yung, counseled him on these issues, and instructed Dr. Yung to do everything he can to help Dr. Klug. *See* Deposition of Mozaffari, pg. 119-122; ECF 149-1.

In her Response, the Plaintiff alleges, without providing a date, that she reported to Dr. Mozaffari that Dr. Yung told an intern that he was going to get her and that she should watch her back. *See* ECF 144, pg. 13. Moreover, the Plaintiff alleges Dr. Mozaffari did not document this or do anything to address it, which is a misrepresentation of the record. *Id*. The alleged complaint occurred on February 2, 2016. *See* Deposition of Mozaffari, pg. 94-96; ECF 149-1. Dr. Mozaffari testified that he talked to Dr. Yung, who denied the accusations, but he made a note to pay close attention to the situation. *Id*.

On February 8, 2016, the Plaintiff made a formal complaint that was ultimately forwarded to the Title IX office. Title IX coordinator, Debra Hart, determined that her complaints did not fall under Title IX, and that they were general workplace issues. *See* Deposition of Debra Hart, pg. 57; ECF 138-2. On the complaint form, the Plaintiff marked "other" as opposed to "sexual harassment," and she marked "no" regarding the question of whether the alleged discrimiantion was continuing. *See* Deposition of Susan Strauss, pg 202-204; ECF 138-1. Ms. Hart also had the understanding that the Plaintiff was pleased with the department's approach to separate her and Dr. Yung. *See* Deposition of Debra Hart, pg. 58; ECF 138-2. The Plaintiff herself acknowledged that she was pleased with the resolution in a communication to her own expert witness. *See* Email from Klug to Strauss; ECF 149-4.

6

The Plaintiff did not have any more problems with Dr. Yung after this resolution. *See* Deposition of Susan Strauss, pg 281-283; ECF 149-5. Plaintiff's own expert, Dr. Strauss, testified that this resolution with Dr. Yung was effective in remedying her complaints. *See* Deposition of Susan Strauss, pg 285; ECF 149-5.

**C.     Miscellaneous allegations of which Dr. Mozaffari had no notice.**

The Plaintiff cites to testimony from Dr. McCagg and Dr. Wolfer that the surgical department was inherently sexist. However, neither Dr. McCagg nor Dr. Wolfer were ever residents in the Marshall University surgery residency program. *See* Deposition of McCagg, pg. 51, Deposition of Wolfer, pg. 55; ECF 149-6,7. Moreover, neither had any specific example of discrimination by Dr. Mozaffari. Dr. McCagg testified that "you could always go to Dr. Mozaffari if there were areas of real like concern." *See* Deposition of McCagg, pg. 10; ECF 149-6. Moreover, any complaint Dr. McCagg heard was hearsay, she never witnessed any discrimination of Klug. *See* Deposition of McCagg, pg. 10; ECF 149-6 (where Dr. McCagg testified "I do remember her [Klug] saying it"). Dr. Wolfer testified that she never witnessed Dr. Mozaffari giving any male residents preferential treatment. *See* Deposition of Wolfer, pg. 51; ECF 149-7. They both testified that did not know any specifics with respect to her academic issues. There is no evidence to support that Dr. McCagg or Dr. Wolfer were made aware of Plaintiff's allegations prior to her filing the complaint on February 8, 2016.

Dr. Klug alleges she had been diagnosed with depression and anxiety. *See* ECF 144, pg. 6. However, she does cite to any medical records to support this diagnosis. More importantly, she doesn't allege that she alerted the Defendants in any way as to this diagnosis. *See* Deposition of Plaintiff, pg 27, ECF 136-11. Moreover, she never requested an accommodation for this alleged disability. *See* Deposition of Plaintiff, pg 27, ECF 136-11.

7

The Plaintiff alleges she believed she only had one outstanding item to complete her PGY2 year. *See* ECF 144, pg. 15. Quite the contrary, at her midpoint evaluation, it was noted she only had an 86% attendance at weekly conferences, rather than her 100% requirement. *See* ECF 136-13. Additionally, Dr. Klug had still not completed her IRB project or abstract for her research. *See* ECF 136-13. These items were due November 1, 2015. *See* ECF 136-13. It was also noted that she had not logged all of her cases to that point. *See* ECF 136-13. Additionally, the ABSITE was discussed and she was informed she needed to achieve a 60% on the ABSITE. *See* ECF 136-13. Dr. Klug received a 305 on her ABSITE, which correlates to a score of 54% and in the bottom 1 percentile compared to her peers. *See* ECF 136-2. Moreover, she was frequently delinquent on medical records lists and had multiple duty hour violations. *See* ECF 136-13. She was informed not to have any further duty hour violations. *See* ECF 136-13. Dr. Mozaffari implored with her to improve her communication skills and not withdraw from others. *See* ECF 136-13. Additionally, she was not meeting weekly with her mentor Dr. Arrington as required. *See* ECF 136-13. In the appeal process, Dr. Klug herself "accepted that she had deficiencies," admitted "she had a lack of communication with Dr. Mozaffari," admitted she "did not adhere to Dr. Arrington's study plan or meetings with her," and regretted not enrolling in the HELP program to improve her test taking abilities. *See* Deposition of Donna Webb, pg. 105-107, Exhibit 11; ECF 136-6.

The Plaintiff alleges that other males who received low test scores graduated the program and were not placed on remediation. *See* ECF 144, pg. 17. Other female residents, such as Katy Blair who started the same year as the Plaintiff, were also put on remediation, but successfully completed remediation. *See* Statement Under Oath of Katy Blair; ECF 149-8. Both males and females were placed on remediation. *Id*. Moreover, Dr. Blair did not witness or experience any

form of sexual discrimination while a resident in the Marshall University surgical residency program.

Any allegations that the Plaintiff alleges after the filing of this lawsuit that the Defendants were not aware of prior to are completely irrelevant because the standard requires actual notice of the alleged wrongdoing. The Plaintiff provides several self-serving statements of general allegations without any specific details provided. However, if her allegations were not articulated to the Defendants at a time they had an opportunity to address the issue, then they should be disregarded. Moreover, her complaints were that of general workplace disputes, and not ones of sexual harassment or sexual discrimination.

### III.　Argument

**A.　Dr. Mozaffari is entitled to Immunity.**

To preclude the immunity defense, the Plaintiff must allege and prove that this Defendant did act fraudulently, maliciously, or oppressively. The Plaintiff has no facts to support this accusation. The Plaintiff alleges that Dr. Mozaffari fostered and condoned a discriminatory, sexist environment, that he failed to investigate or address her complaints for over a year, and that he unfairly evaluated her performance, leading to her termination. As addressed herein, the Defendant disputes these conclusory allegations with the actual facts in the record. However, even if these conclusory allegations were true, they are not fraudulent, malicious, or oppressive acts that violate the Plaintiff's statutory or constitutional rights. Rather, they are conclusory allegations of a subpar supervisor, which is not enough to defeat the immunity defense. The Plaintiff does not equate any specific allegation against Dr. Mozaffari to being an action that was fraudulent, malicious, or oppressive.

9

The record shows that Dr. Mozaffari went out of his way to attempt to help the Plaintiff. When Plaintiff informed Defendant Mozaffari that she did not trust him, he immediately removed himself from the decision-making process. His acts in no way could be considered fraudulent, malicious, or otherwise oppressive. As a result, Defendant Mozaffari is entitled to immunity from the Plaintiff's claims.

The Plaintiff argues that Dr. Mozaffari is liable for his own actions as well as that as a supervisor, and notes that she has to show: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994); *Rex v. W. Virginia Sch. of Osteopathic Med.*, 119 F. Supp. 3d 542, 552 (S.D.W. Va. 2015). The Plaintiff has failed to meet this burden. Each time he was made aware of an issue, he took an effective action, which is the complete opposite of deliberate indifference.

**B.     Plaintiff's claim of Sex Discrimination under the WVHRA fails as a matter of law.**

The Plaintiff makes two fatal mistakes in arguing her claim of sex discrimination. First, she does not address that the WVHRA claims are only pending against Dr. Mozaffari, not Marshall University. Moreover, they are only attributable to him as an employee of a place of public accommodation, because the Plaintiff is not an employee, but a student. Thus, the relevant inquiry is under West Virginia Code section 5–11–9(6)(A), where it is an unlawful discriminatory practice for any agent or employee of any place of public accommodations to: "Refuse, withhold from or

deny to any individual because of his or her race, religion, color, national origin, ancestry, sex, age, blindness or disability, either directly or indirectly, any of the accommodations, advantages, facilities, privileges or services of the place of public accommodations." Dr. Mozaffari can only be liable for his own direct actions or indirect actions to which he was made aware.

There is no evidence that Dr. Mozaffari acted discriminated against the Plaintiff in any way. The Plaintiff herself admits she has no direct evidence of discrimination. Nothing in any of the Plaintiff's complaints can be categorized as unwelcome conduct based on her sex. She has no discriminatory accusations that provide any level of specificity of what the actual discrimination was. Rather, she has her own self-serving affidavit to support her conclusory allegations of discrimination.

When completing the Title IX complaint form, the Plaintiff marked "other" rather than "sexual discrimination" when describing her complaints. When each and every complaint that Dr. Klug ever made to Marshall University was discussed with Dr. Strauss, she acknowledged that the complaints were workplace disputes that were not sexually based on their face.

This WVHRA claim is about Dr. Mozaffari, not Marshall University. Dr. Mozaffari didn't create the call schedules or assign cases, he just assigned rotations. Dr. Klug made a specific complaint against Dr. Mozaffari, informing him that she did not trust him. While this is not gender related, Dr. Mozaffari removed himself from the decision-making process in order to appease her and eliminate any inference of impermissible behavior. As Plaintiff's own expert admits, this was appropriate. Moreover, his decision alleviated Dr. Klug's complaint.

When Dr. Mozaffari was made aware of any complaints of the Plaintiff, he attempted to resolve them. Because the Plaintiff cannot provide any evidence that she was subjected to

unwelcome conduct that was objectively severe or pervasive, her sexual discrimination claim under the WVHRA fails as a matter of law.

Moreover, Dr. Mozaffari did not make the decision with respect to Plaintiff's status as a resident in the program. The C3 committee decided to non-renew her contract. They held the first level of appeal and stood by their decision. The Ad Hoc Committee upheld this decision at the second level of appeal. Finally, Dean Shapiro also upheld the decision to non-renew. Dr. Mozaffari was not a decision maker at any level with respect to her dismissal as a resident in the general surgery program. As a result, he cannot be liable for the same.

**C.      Plaintiff does not have a valid claim for disability discrimination under the WVHRA.**

The Plaintiff has not provided any evidence that Dr. Mozaffari was aware of her disability, that she needed an accommodation, or that a reasonable accommodation existed. The Plaintiff herself testified that she did not feel that her anxiety or depression affected her job. Further, she testified that she did not tell anyone, or Dr. Mozaffari, that it affected her job. She can have no disability claim without establishing these elements. The Plaintiff does not even address the issue of whether she ever requested an accommodation or a reasonable accommodation existed. As a result, her claim for disability discrimination fails as a matter of law.

Moreover, even if all the necessary elements were established, Plaintiff fails to acknowledge that Dr. Mozaffari did not take any action with respect to her status as a resident after January 4, 2016. Thus, it is impossible for him to retaliate against her, especially for a disability he was not aware of or one he could provide a reasonable accommodation for in the context of a general surgery residency program.

**D.     Plaintiff's Aiding and Abetting claim fails as a matter of law.**

Whenever Dr. Klug made a complaint, Dr. Mozaffari stepped in and attempted to resolve that complaint regardless of whom the complaint was made. That is the complete opposite of aiding and abetting. The Plaintiff admits that he adjusted Dr. Klug's schedule, reprimanded Dr. Yung, told other residents to stop watching inappropriate videos, and each time the complaint was resolved. He has to have knowledge of another's inappropriate conduct and give substantial assistance to further that conduct. The record is completely void of the requisite knowledge and assistant. Dr. Mozaffari took himself out of the decision-making process in order to appease the Plaintiff. He did not take any action with respect to her non-renewal in the program.

As a result of the above, the Plaintiff's aiding and abetting claim must be dismissed as a matter of law.

## IV.     Conclusion

**WHEREFORE**, for the reasons stated above, this Defendant respectfully moves the Court to enter an Order dismissing all claims asserted against him with prejudice and for any and all other such relief as the Court deems appropriate and just under the circumstances.

**FARID B. MOZAFFARI,**

**By counsel**

s/Eric D. Salyers
Perry W. Oxley (WVSB #7211)
David E. Rich (WVSB #9141)
Eric D. Salyers (WVSB #13042)
Oxley Rich Sammons, PLLC
517 9th Street, Suite 1000
Huntington WV 25701
304-522-1138
304-522-9528 (fax)
poxley@oxleylawwv.com

drich@oxleylawwv.com  
esalyers@oxleylawwv.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

**REBECCA KLUG,**

      **Plaintiff,**

v.                                      **Civil Action No.: 3:18-CV-00711**
                                              **Judge Robert C. Chambers**

**MARSHALL UNIVERSITY**
**BOARD OF GOVERNORS,**
**and FARID B. MOZAFFARI, an individual,**

      **Defendants.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel for Defendant, Farid B. Mozaffari, served the foregoing "***Defendant Farid B. Mozaffari's Reply to Plaintiff's Response to his Motion for Summary Judgment***" by electronically filing a true copy of the same with the Clerk of the Court using the CM/ECF system on this **30th** day of **April**, **2021**:

                          Kristina Thomas Whiteaker
                          David L. Grubb
                          The Grubb Law Group
                          1114 Kanawha Boulevard, East
                          Charleston, WV  25301
                          *Counsel for Plaintiff, Rebecca Klug*

                          s/Eric D. Salyers
                          Perry W. Oxley (WVSB #7211)
                          David E. Rich (WVSB #9141)
                          Eric D. Salyers (WVSB # 13042)